CASE 34—PETITION EQUITY—OCTOBER 29.

# Hopkins' Adm'r v. Faeber. Trustee.

APPEAL FROM HARRISON CHANCERY COURT.

1. EVIDENCE AS TO TRANSACTION WITH DECEDENT.—In an action by a trustee against the personal representative of a decedent, a beneficiary of the fund sought to be recovered cannot testify for the plaintiff as to a transaction between a former trustee and the defendant's intestate. And the fact that the plaintiff may have an interest in the recovery does not make those interested with him competent witnesses.

2. SAME.—If the plaintiff claims that the interest of the witness has been removed by the payment to him of his share of the fund before the transactions as to which he offers to testify took place, the burden is upon the plaintiff to show that fact.

J. Q. WARD FOR APPELLANT.

A beneficiary in a trust fund is not a competent witness for the trustee in

86 223
109 577

86 223
116 518

86 223
116 518

86 223
118 214

86 223
124 417

an action against the personal representative to recover the fund. (Civil Code, subsec. 2, sec. 606.)

T. T. FORMAN FOR APPELLEE.

1. The issue presented by the pleadings being a common law issue, the judgment of the chancellor should be treated as the verdict of a properly instructed jury—not to be reversed unless palpably against the evidence. (P. C. & St. L. R. R. Co. v. Woolley, 12 Bush, 453; Fraley v. Peters, 12 Bush, 470; Union Ins. Co. v. Groom, 4 Bush, 294.)

2. The interest of a witness being remote and uncertain, the evidence is not incompetent under subsec. 2, sec. 606, of Civil Code. (Waters v. Davis, MS. Op. Court of Appeals, Jan. 27, 1887; Hardin's Administrator v. Taylor, 78 Ky., 593.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Ferdinand Faeber died in the county of Harrison, leaving a last will, and his widow with several children surviving him. He devised his estate to his wife for the purpose of educating and maintaining his children, with the provision that when his son arrived at twenty-one years of age there should be a division of his estate between his children, and in the meantime, if his daughters married, his widow was to give them as much of their share of the estate as she could spare.

The widow, after the death of her husband, having an intimate friend in the person of a young man by the name of O'Hearn, living in the same town with her (Cynthiana), intrusted him with all of her money to use and invest for her at his discretion, and their friendship soon terminated in an agreement to marry. The confidence she had in him was so great that no evidence whatever was taken by her of the moneys or property she had intrusted to his keeping, and the young man having accidentally and suddenly lost his life by falling from a window, the result is the present action to recover the property or its value confided to his care.

The widow instituted the action against O'Hearn's administrator, and dying, the present appellee, Perrin, was made the trusteee under the will, or rather by appointment, and the action was prosecuted in his name against O'Hearn's administrator. The character of the trust, and the amount of money and notes held by O'Hearn for the widow and her children, is established by the testimony of her daughter.

She states that certain government bonds belonging to her father had been converted into money by O'Hearn, with the consent of her mother, and that this money had been loaned out to persons whose names are given, and their notes made payable to O'Hearn. That a few days prior to the death of O'Hearn, at her mother's residence, in her presence, he pulled out of his pocket or exhibited a linen sack with a blue ribbon upon it, in which the notes on these parties were being kept by O'Hearn. That they were then in the sack exhibited, and said by O'Hearn to be the proceeds of the bonds sold as the property of her mother. That the notes amounted to two thousand three hundred dollars; that he also exhibited of money in the same sack two thousand two hundred dollars, giving the number of bills, etc. He then took a copy of the will of her father to place in this sack, and made, or said he would make, a memorandum showing that the contents of the sack belonged to her mother, in order to avoid trouble in the event of any accident to him.

In a few days after this O'Hearn died. The sack was found, and in it was the notes described by the daughter and twelve hundred dollars in money, together with a copy of Faeber's will.

vol. 86—15.

The chancellor, on the hearing, gave judgment for the notes and twenty-two hundred dollars in money, making in all four thousand five hundred dollars. Of this, the administrator of O'Hearn complains, insisting that judgment should have been for the notes and twelve hundred dollars, the real contents of the sack as it appeared after O'Hearn's death.

If the daughter of the testator, Faeber, is a competent witness, this judgment is correct; if not, the judgment is erroneous. There is no witness by whom the trust as to its amount and character is established, except this daughter, who is one of the beneficiaries under the will of her father.

Perrin, the present trustee, has no interest whatever in the fund, except to hold it for this daughter and her brothers and sisters.

The mother was a trustee with an interest in the estate, as provided by the terms of the will, and the testimony of the daughter establishing the claim of the trustee is based alone on the transactions and conversations had between her mother and O'Hearn in her presence, the effect of which is to give to her an interest in the sums recovered, the whole to be distributed as directed by the will of her father. This witness was, at the time her testimony was given, married and of full age, and it is insisted that this court should assume that she had received her distributable share of the estate, and was, therefore, not interested in the controversy. If her interest had been paid to her, or her incompetency to testify removed before these transactions with O'Hearn, the burden was on the appellee to show that fact, for the reason that, as the record now

stands, she is evidently entitled to share in the recovery. If the devisee or distributee can testify for the trustee or the administrator, then the very object of the statute is defeated in permitting the person directly interested in the controversy to testify as to transactions with the decedent in order to the recovery. One of the exceptions to the provisions of the Code permitting every one to testify is, "that no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by one, * * * who is dead when the testimony is offered to be given, except for the purpose and to the extent of affecting one who is living," etc. (Subsection 2 of section 606, Civil Code.)

The fact that the personal representative or the trustee may have an interest in the recovery does not affect the question involved, or make those interested with him competent witnesses ; for if so, then one of the heirs or distributees, by administering on the estate, could make his co-distributees competent witnesses, and in this way destroy the efficacy of the statute. In testifying in this case the witness was testifying for herself against the estate of the decedent, and her testimony controlled the extent of the recovery, and the fact that she was not a party to the action does not alter the rule or vary the construction given this provision of the Code. She was competent to testify as to the character of her mother's estate, but her testimony as to what transpired between her mother and the decedent was clearly incompetent.

If the statement of the daughter is excluded as to what passed between her mother and the decedent as to

the amount of money and notes in the small sack, and that it was her funds and he was holding them for her, we must then look to other testimony with a view of determining the right as well as the amount of recovery.

It is manifest, we think, from the proof of Sphon, that the money and notes in the small sack belonged to the widow of Faeber as trustee under the will. The sale of three thousand dollars of government bonds belonging to the widow is traced directly to the decedent, and that he was loaning money for the widow can be inferred from other testimony—that of Rankin and Sullivan. Sphon states that one thousand six hundred dollars was borrowed by O'Hearn of Mrs. Faeber for Sullivan, and the one thousand six hundred dollar note executed by Sullivan, payable to O'Hearn, was found in the sack, as well as another note on Sullivan amounting to five hundred dollars, and one on English for two hundred dollars. There was also in the sack twelve hundred dollars in money, and perhaps more, as Sphon swears that O'Hearn, a few days prior to his death, took this money from the sack and told him it belonged to Mrs. Faeber, and counted as much as twelve hundred dollars, and had other bills in his hands, but being interrupted by the approach of some one, returned the money to the sack. How much money was in the sack does not appear, and we have no means of ascertaining when the testimony of the daughter is out of the case. Ordinarily, a trustee would be required to make an exhibit of his accounts with the beneficiaries; but in this case both parties are dead, and the administrator of O'Hearn is denying the right of recovery, and even the existence of the trust.

Hopkins' Adm'r v. Faeber, Trustee.

The evidence shows such careless and negligent conduct on the part of Mrs. Faeber in failing to take any receipt of O'Hearn, as would preclude the chancellor from fixing upon the sum alleged to be due her from the mere statements of the petition as to the amount of recovery. Besides, it appears that O'Hearn was engaged in business—was a man of business habits and reliable in his business transactions; and when looking to the entire testimony, including that of the daughter, there remains a doubt in the mind of the chancellor as to the amount of money received by him from Mrs. Faeber. There is certainly testimony conducing to show that it was less than four thousand five hundred dollars; but with the statement made by the daughter taken as evidence, it may be said that the weight of the testimony sustains the judgment below. The sack was found in O'Hearn's possession the morning after his death. But a few days before that the daughter says it contained two thousand two hundred dollars in money; but when its contents were examined after his death, it contained only twelve hundred dollars. There is no evidence showing that O'Hearn had used any money after the time spoken of, and nothing in the record conducing to show that those having the sack in possession after his death used any part of it. We must adjudge that the recovery should have been limited to thirty-five hundred dollars. This is one thousand dollars less than the judgment below.

The judgment below is reversed, and remanded with directions to enter such a judgment, and for proceedings consistent with this opinion.