CASE 6—PETITION ORDINARY—FEBRUARY 28.

## Mercer, &c., v. Mercer's Adm'r.

APPEAL FROM MARION CIRCUIT COURT.

1. PROMISE OF PUTATIVE FATHER TO SUPPORT BASTARD CHILD.—The
   natural affection of a putative father for his bastard child, and the
   moral obligation and duty resting upon him to support and provide
   for it, do not constitute a sufficient consideration to impart a legal ob-
   ligation to a verbal promise by the father to support or provide for
   the child.
2. PRACTICE.—This being really an action at law brought and heard with-
   out objection upon the equity side of the docket, if there were no
   other obstacle, the court is not authorized to reverse the chancellor's
   finding upon the facts, as it is not flagrantly against the evidence.

HARRISON & BELDEN FOR APPELLANTS.

The moral obligation resting upon the putative father of a bastard child
   to support and provide for it constitutes a sufficient consideration to
   impart a legal obligation to a promise by the father to support or pro-
   vide for the child. (Bergen v. Straughan, 7 J. J. M., 583; Common-
   wealth v. Turner, 4 Dana, 513.)

WM. LINDSAY FOR APPELLEE.

1. This is an action at law commenced in equity, and prepared and tried on that side of the docket because neither party moved to transfer it to law. The judgment of the court is, therefore, to be treated as the verdict of a properly instructed jury. (Woolley v. P., C. & St. L. R. R. Co., 13 Bush, 451; Fraley v. Peters, 13 Bush, 469; Meek v. McCall, 80 Ky., 371.)

2. In an action to enforce an oral promise the consideration must be averred. (3 Bibb, 115; 4 Bibb, 269; 2 Mar., 139.)

3. The moral obligation of a father to maintain, educate and set out in the world his bastard children is not a sufficient consideration to render valid and enforceable an oral promise. (Clark v. McFarland, 5 Dana, 47; Chitty on Contracts, 11th American ed., pars. 52, 53, 54.)

RUSSELL & AVRITT ON SAME SIDE.

1. The mother of the bastard children was directly interested in the recovery sought, and was, therefore, not a competent witness to prove the alleged promise of the decedent. (Civil Code, sec. 606, subsec. 2; Hobb's Ex'r v. Russell's Ex'r, 79 Ky., 61; Alexander's Ex'rs v. Alford, &c., 4 Ky. Law Rep., 693; Stowers' Adm'r v. Hollis, by &c., Op. Sup. Ct., Feb. 4, 1885.)

2. A contract to make a certain devise will not be enforced unless based upon a valuable consideration, and clearly proved. (Hinton v. Gano's Heirs, MS. Op., Jan. 8, 1885; Smith v. Smith, 5 Bush, 625; Myles v. Myles, 6 Bush, 237; McGuire v. McGuire, 11 Bush, 142.)

3. There was no valid consideration for the alleged promise. A purely moral obligation is not sufficient to support a promise. (Clarke v. McFarland's Ex'rs, 5 Dana, 47; Montgomery v. Lampton, 3 Met., 519; 2 American Leading Cases, Hare & Wallace, 201.)

3. The alleged contract had its origin in moral turpitude and cannot, therefore, be enforced. (Hanson v. Power, 8 Dana, 95.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellants, who are bastards, sue in assumpsit by their mother as their next friend to recover upon an alleged parol promise made to her for their benefit by their deceased putative father, Felix Mercer. The petition avers that he, in consideration of his relationship and the natural moral duty resting upon him to support and educate them, promised to give and secure to them therefor his entire estate, less ten thousand

dollars, to be given to another illegitimate child. No other consideration is stated.

At common law the father was not bound to support his bastard child. He was said to be *filius nullius;* and while in the absence of a statute the father is under no legal obligation to support him, and it can be enforced only through the remedy thus provided, yet a just sympathy for the innocent and helpless, and a proper recognition of right, has led to some advance of legal right and remedy in his favor. Thus the weight of English authority now is that a promise by the putative father to pay the mother a certain sum in consideration that she will support and maintain their child, is enforceable. (Jennings v. Brown, 9 M. & W., 496; Hicks v. Gregory, 8 C. B., 378.) Also, if his promise be in consideration that the mother will abstain from affiliation or bastardy proceedings against him, and in consequence thereof she suffers the time within which they may be had to expire, it will be binding upon him. (Lumigar v. Hodd, 5 C. B., 437.)

In this State it was held by this court, in the early case of Burgen v. Straughan, 7 J. J. M., 583, that a contract by the putative father to pay the mother a certain sum for the support of their child, provided she would not proceed against him under the bastardy act, was not immoral or inconsistent with the policy of the law, but binding and enforceable. She has a right to compel him to assist in supporting the child. It is a civil right, supported by a civil remedy. If to save both from exposure and disgrace, and to induce her to waive her right to compel him to do right, he promises to contribute for the support of their innocent and help-

less offspring, there is no compounding of an offense or other violation of the rights of society. In such a case she waives a right, and it is a sufficient consideration to support the contract. Indeed, such a course is likely to redound often to the public benefit. The mother will often prefer to suffer in poverty, and permit her child to do so, rather than expose her shame to the gaze of the public eye by a court trial; and then the child, in the absence of a contract by the father to support it, based upon the waiver of legal proceedings by the mother for that purpose, and which is a detriment to her and therefore a valuable consideration, will, as a pauper, become a charge upon the community. The same doctrine was announced in the later case of Clarke v. McFarland's Executors, 5 Dana, 45, where such a contract, made when the mother was about to institute bastardy proceedings, was upheld. The court, however, in substance, said that the natural affection of a putative father for his child, and the moral obligation and duty resting upon him to support and provide for it, did not constitute a sufficient consideration to impart a legal obligation to a verbal promise. They are insufficient in themselves to such an end. A mere moral duty is insufficient of itself as a consideration for such a contract. In this instance nothing else was either pleaded or proven as a consideration for the alleged promise.

The action is against both the heirs and personal representative. Doubtless, the only reason why it was instituted upon the equity side of the docket was, that the personal estate of the decedent was insufficient to pay the claim, and it was asked that the real estate in

the hands of the heirs be subjected to its payment. It is not an action against the heirs alone to obtain a lien upon the real estate descended to them, but one to enforce a legal right for which a legal remedy exists. (Hagan, &c., v. Patterson, 10 Bush, 441.) It is really an action at law, brought and heard without objection upon the equity side of the docket. The mother is really the only witness in support of the alleged promise or promises. She is not only materially contradicted, but is shown to be of bad character. The chancellor, acting in the place of a jury, passed upon the facts ; and if there were no other obstacle in the way we would not be authorized, upon the evidence, to reverse his finding as flagrantly against it.

The mother lived with the decedent for many years as his concubine. The unlawful relation began prior to the birth of any of the appellants, and continued until his death. She no doubt expected that he would provide for her and her children by will. There is no evidence that she ever threatened or proposed to institute any proceedings against him looking to the support of the children. They were all living under the same roof. Under such circumstances it would be exceedingly dangerous to the rights of legitimate heirs, even legitimate children, and destructive of home, family and social relation, if, upon questionable testimony, and mere natural affection and moral duty only, the parol promise of the putative father were to be held valid, and his estate subjected to its payment.

The statute has provided a remedy for the mother and illegitimate children ; and the law, through mercy and for the protection of the weak and helpless from

the imposition of designing men, and to guard against the waiver or loss of their legal rights by a reliance upon promises, has so far expanded by the aid of the courts as to permit the enforcement of a promise, such as we have been considering, if based upon a sufficient consideration, and not resting upon a mere moral or natural duty.

Judgment affirmed.