CASE 24—ACTION BY DAVID IRVINE DOTY, BY HIS GUARDIAN ANNIE
JAMES AGAINST THE ADM'R AND HEIRS AT LAW OF BOYLE DOTY,
DECEASED, TO ENFORCE A CONTRACT—MAY 11.

# Doty's Adm'r., &c. v. Doty's Guardian.

APPEAL FROM MADISON CIRCUIT COURT—J. M. BENTON, CIRCUIT JUDGE.

FROM THE JUDGMENT ALL PARTIES APPEAL. AFFIRMED ON BOTH AP-
PEALS.

ACTION AGAINST ADMINISTRATOR—WITNESSES—COMPETENCY—INTEREST
IN LITIGATION—COMPENSATION AS GUARDIAN—COSTS—CONTRACTS—
EVIDENCE OF MAKING—LEGALITY—SUFFICIENCY—STATUTE OF
FRAUDS—PAROL CONTRACT TO CONVEY LANDS—PART PERFORMANCE.

1. Civ. Code, sec. 606, provides that no one shall testify for
himself concerning any transaction with a decedent; and Ky. St.
1903, sec. 892, provides that a guardian shall, if unsuccessful, pay
costs, as other litigants, and that the judgment shall only be
against the assets which may have come into his hands. HELD,
that, were a minor sued by his guardian to recover of an adminis-
trator under a contract made between the minor's guardian and
the intestate for the infant's benefit, the guardian was not in-
competent to testify to the contract by reason of any interest in
the costs of the suit.

2. Civ. Code, sec. 606, provides that no one shall testify for himself,
as against a decedent, concerning any transactions between him-
self and the decedent; and Ky. St., 1903, sec. 2036, provides that
a guardian, besides all necessary disbursements, shall be allowed
by the court a reasonable compensation for his services. HELD,
that where an infant, by his guardian, sued an administrator to
recover under a contract made for the infant's benefit between the
intestate and the guardian, the guardian was not, by reason of
section 2036, incompetent to testify to the contract.

3. Civ. Code, sec. 606, provides that no one shall testify for him-
self, as against a decedent, concerning any transaction between
himself and the decedent. HELD, that where an infant, by his
guardian, sued an administrator to recover under a contract made
for the infant's benefit between the intestate and the guardian,
the guardian was competent to testify to the contract.

Doty's Admr., &c. v. Doty's Guardian.

4. In an action by an infant against an administrator to recover on a contract alleged to have been made between the intestate and the infant's mother, whereby the intestate agreed to give the child a specified amount of lands and money, evidence considered, and HELD sufficient to sustain a finding that such a contract was made.

5. A man's mistress, by whom he had a child, left his home, taking the child with her, but subsequently returned with the child, after which they lived at the home of the father; and on the return the father agreed that, in consideration of the mother's never taking the child away again, he would give the child land, etc. HELD that the contract was not invalid as one contemplating the continuance of an illicit relation.

6. Part performance of a parol contract for the conveyance of land will not take the transaction out of the statute of frauds.

7. Where one receives the consideration for a parol promise by him to convey lands, and he fails to do so, the other party is entitled to damages based on the value of the lands.

J. A. SULLIVAN FOR APPELLANT.

POINTS AND AUTHORITIES CITED.

1. Annie James was an incompetent witness.

(a) A party to the action. Ency. P. & P. vol. 15, p. 163; Hunt v. Haven, 52 N. H., 162; Ency. P. & P., vol. 15, 594; Ency. P. & P., vol. 15, p. 617; Sub-section 2, section 37, Civil Code; Miller v. Cabell, 81 Ky., 178; Sub-section 1, section 35, Civil Code; Sub-section 1, section 38, Civil Code; Lampton v. Lampton, 6 Monroe; Alexander's Ex'or v. Alfred, 89 Ky., 105.

(b) She as guardian is interested in the result and liable for costs. Greenleaf on Evidence, sec. 347; Mason v. McCormick, 75 N. C., 263; Section 2063, Kentucky Statutes; Campbell v. Williams, 3 Mon., 132; Hughes v. Smith, 2 Dana, 251; Campbell v. Golden, 79 Ky., 544; Haden v. Easton, 15 Ky. Law Rep., 597; Apperson's Ex'or v. Exchange Bank, 10 Ky. Law Rep., 943; Smick's Adm'r v. Beswick's Adm'r, 24 Ky. Law Rep., 276-9; Greenleaf on Evidence, sec. 391; Townsend v. Wilson, 24 Ky. Law Rep., 1276; Mix v. Mardes' Ex'or., 79 Ky., 13; Story v. Story's Ex'or., 22 Ky. Law Rep., 1751; Greenleaf on Evidence, sec. 389; Beach v. Cumming's Ex'ors., 13 Ky. Law Rep., 881.

(c) She was a party to the contract and a beneficiary thereunder. Townsend v. Wilson, *supra*; Swinebroad v. Bright, 21 Ky. Law Rep.; Swinebroad v. Bright, 25 Ky. Law Rep., 743; Jones on Evidence, sec. 790; Slower v. Hollis, 83 Ky., 545; Mercer v. Mercer, 9 Ky. Law Rep., 884; Healy v. Healy, 66 N. Y., 82.

2.   The contract and its consideration.

(a)   Not sufficient consideration to support a contract.   King's Ex'ors. v. Hanna, 48 Ky., 369; Berry v. Graddy, 1 Met., 553; Scott v. Osborne, 2 Munf. (Va.), 413; Meacham v. McKee, 1 Hill L. (S. C., 374); Benge v. Hiatt's Adm'r, 82 Ky., 666; Healy v. Healy, *supra;* Healy v. Simpson, 113 Mass., 340.

3.   Vice is part of the consideration for the contract and it is therefore void.   Lytle v. Newell, 24 Ky. Law Rep., 188; Mc-Adams on Landlord & Tenant, sec. 90; Chitty on Contracts, 654; Hall v. Cappell, 7 Wall., 542; Kent, 467; Brown's Ex'or v. Langford's Adm'r, 3 Bibb, 97; Kimbrough v. Lane, 11 Bush, 556; Swann v. Chandler, 8 B. Monroe, 97; Chitty on Contracts, 692; 3 Bibb, 500; 6 Dana, 91; Cillins v. Merrell, 2 Met., 163; Am. & Eng. Ency. Law, vol. 15, p. 988 (2d ed.)   .

4.   The finding of the lower court that any such contract was ever made or entered into between Annie James and the decedent is flagrantly against the weight of evidence.   Jones on Contract, secs. 350 and 351; Jones v. Jones, 19 Ky. Law Rep., 1516; 37 La. Ann. 873; Greenleaf on Evidence, sec. 200; Boener v. Helronymous, 19 Ky. Law Rep., 646; Mercer v. Mercer, *supra.*

5.   Review of the position of the appellee.   The authorities cited by her are not in point and do not support her contention.   Hiatt v. Benge, *supra;* Burgin v. Strougham, 7 J. J. Mar., 583; Clark v. McFarland's Ex'or., 5 Dana, 215; Berry's Adm'r v. Graddy, 1 Met.; Story v. Story, *supra;* Winnebrinner v. Weisenger, 3 T. B. Mon., 35; Mercer v. Mercer, *supra;* King's Ex'or v. Hannah, 9 B. Mon., 372; Berry v. Graddy, 1 Met., 556; Am. & Eng. Ency. Law (2d ed.), vol. 6, p. 718.

6.   The opinion of the lower court in the individual action of Annie James and in this suit are in conflict and inconsistent with each other.   Woodram v. Cincinnati Railway Co., 18 Ky. Rep., 245; Miller v. Cabell, *supra.*

MOBERLY & BURNAM for appellant.

POINTS RELIED ON AND AUTHORITIES CITED.

1.   The petition not having alleged that the contract sued on was in writing, the presumption of law is that it was oral.   The general demurrer to the petition, and the denial of the contract in the answer, presented the defense of the Statute of Frauds.   Biass v. Reece, 4 (Met.), 372; Hocker v. Gentry, 3d (Met), 474, Newman on Pleadings, 390; Smith v. Fah, 15 B. M., 444; Smith v. Theobald, 86 Ky., 141.

2.   The early Kentucky cases holding that an oral contract for

Doty's Admr., &c. v. Doty's Guardian.

the sale of land is voidable have long since been overruled, and the doctrine now is that they are void. Usher v. Flood, 83 Ky., 552; Asher v. Brock, 95 Ky., 272; Newberger v. Adams, 92 Ky., 27; White v. O'Bannon, 82 Ky., p. 93; Duncan v. Duncan, 93 Ky., p. 37.

3. Part performance is not now and never was the law in this State. An oral contract as to realty can not be enforced directly or indirectly. Hayden v. McIlvain, 4 Bibb, 57; Spears v. Sewell, 4 Bush, 239; Usher v. Flood, 83 Ky., 552.

4. Damages or compensation can not be recovered on an oral contract. An action, if any lies, must be brought on the implied promise to repay the purchase money paid or to pay for the reasonable value of services performed, or to restore, uninjured in value, any article, or even person, delivered in payment of the purchase price. Davis v. Jones' Adm'r, 94 Ky., 320; Browne Statute Frauds, secs. 121, 124, 125, 126; Erben v. Lorillard, 19 N. Y., 299; Sans v. Arthur, 84 Pa. St., 479; Hamble v. Hamilton, 3 Dana, 501; Montague v. Garnet, 3 Bush, 297; Spears v. Sewell, 4 Bush, 239.

5. The cause of action herein being on the contract, no recovery can be had on the implied promise. Price v. Price, 101 Ky., 28; Frankfort Bridge Co. v. Frankfort, 8 B. M., 424, 18 B. M., 34.

6. The Benge-Hiatt case is out of harmony with all Kentucky authority; is an anomaly, and should be overruled. Wallace v. Long, 5 N. E., 670; Hertzogg v. Hertzogg, 34 Pa. St., 413; Ellis v. Carey, 4 L. R. A., 54; Erben v. Lorillard, 19 N. Y., 299, and the cases reviewed in said cases.

7. A contract by a parent for the sale of the custody of a child, or husband or his wife, is against public policy and void. 15 Am. & Eng. Ency. Law (2d ed.), 958, and numerous cases cited in notes.

8. The proof in this case fails completely to establish part performance on the part of the mother by the delivery of the control of the child; or part performance on the part of Doty by delivering possession of the land. In either event such possession must be notorious, exclusive and in pursuance of and solely referable to the oral contract. Browne, sec. 473, and following: Baldwin v. Squires, 31 Kan., 283; Browne, sec. 454; Am. & Eng. Ency. Law, vol. 8, 744.

9. Part of the alleged contract being within the Statute of Frauds it is void, both as to the realty and as to the $2,500.00. Browne, sec. 151; Pond v. Shehan, 132 Ill., 312; Grant v. Grant, 63 Conn., 530; Ellis v. Carey, 74 (Wis.), 176; Debearhski v. Page, 36 N. Y., 537; Gould v. Mansfield, 103 (Mass.) 408.

Doty's Admr., &c. v. Doty's Guardian.

SMITH & BUSH, J. TEVIS COBB AND C. H. BRECK, ATTORNEYS FOR
APPELLEE.

In England nearly two hundred years ago one of the "nobility" misled an innocent young woman and had a son by her. He lived with her a little while, but afterwards married another woman. But before doing so he executed a bond in which he promised to give the boy at his death $10,000, and died. Suit was brought upon the bond by the mother for the boy in the high court of chancery, and a motion was made to dismiss it upon the ground, "that it being a matter of turpitude, equity ought not to meddle and should not lend assistance." The Lord Chancellor substantially said: "Turpitude consists in the doing of the wrong and not in making reparation." So we say, this is a case of doing justice—making amends for wrong done to the innocent. Justice is clean and appeals to the highest of all courts. To do justice—to make reparation for wrong done—requires the exercise of the highest function of this court, and that for which it was established. In that case the chancellor gave the mother judgment for the amount due the child, and the finding was approved by the House of Lords.

In this case we submit:

1. That the contract as alleged and proved by Annie James, mother of the infant plaintiff, who made the contract, is absolutely uncontradicted.

2. Her testimony is clear and explicit and every part of the contract, as stated by her, is confirmed by disinterested witnesses, and by acts, "the subsequent conduct of the parties," and by the statements of the intestate.

3. The contract was literally executed, with the exception that the intestate failed to make the conveyance of the land either by deed or will.

4. The intestate definitely described the land and marked the boundary thereof, and built the house thereon, and put the appellee, his son, into possession.

5. It is nowhere shown in the record that intestate, Boyle Doty, ever in any way repudiated the considerations of the contract.

6. That which it is contended he agreed to do was the natural, sensible and right thing to be done under the circumstances, and is creditable not only to his heart but to his head.

7. He had given the boy his name, and his purpose, as declared by the contract, was to establish him, as his son, upon the land which he himself had owned, to educate and make him an intelligent and reputable citizen.

Doty's Admr., &c. v. Doty's Guardian.

We further submit that in contemplation of the law an "illegitimate" is the son of his mother, and the subject of contract between the mother and the father.

The mother has the legal custody and control of the child, and any concessions she makes to the father as to her custody or control is a sufficient consideration for the promise by the father to do something for the child.

We also insist that the mother is a competent witness to prove the contract. She is not a party in interest and does not testify for herself. The infant is the only claimant, and the contract was made exclusively for his benefit. The fact that she is the infant's guardian and may be liable for costs does not make her an interested party in the meaning of the law.

## AUTHORITIES CITED.

Benge v. Hiatt's Admr., 82 Ky., 666; Burgen v. Stranghan, 7 J. J. Mar., 583; Clark v. McFarland's Exr., 5 Dana, 45; Belt, Admr., v. Graddy, 1 Met.; Ware v. Hylton, U. S. Sup. Ct., 3 Dallas, 199; Mix v. Marder's Exr., 79 Ky., 131; Story v. Story's Admr., 22 R., 1731; Beach v. Cummins' Exr., 13 Rep., 881; Winebrenner v. Weisenger, 3 T. B. Mon., 35; Lytle v. Newell, 24 R., 181; Slowers v. Hollis, 83 Ky., 545; Mercer v. Mercer's Admr., 9 R., 884; Healy v. Healy, 66 N. Y., 927; Jones v. Jones, 19 R., 1516.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

About the year 1878, Boyle Doty, a well-to-do bachelor, something like thirty-five years of age, living on his farm, in Madison county, became intimate with Annie James, a girl about sixteen years of age, living with her grandmother in the slashes, two or three miles from Doty's residence, her father and mother being dead. In the year 1882, her grandmother having died, she went to his house and lived with him as his mistress. In 1889 a son was born to them—the appellee, David Irvine Doty. They continued after the birth of the child living together as before until the year 1898, when there was some talk about the grand jury indicting them, and she took the boy and went to Missouri, staying there for some

weeks. On her return from Missouri she took the boy with her to Doty's house, and she there lived with him as before until his death, on September 6, 1901. He left a considerable estate, a large part of which he had accumulated while Annie James lived with him and managed and controlled his household, doing all those .thing that a farmer's wife would usually do under similar circumstances. After his death the child, David Irvine Doty, by his mother, as guardian, brought this suit against the administrators and heirs at law of Boyle Doty, charging the* facts stated, and alleging that, when his mother returned from Missouri with him, Boyle Doty agreed with her that if she would not take the child back to Missouri, and would bring him to his house to live, and never take him away from him, so that he could have him constantly with him, and raise and educate him, he would give the child 250 acres of land within a certain boundary, worth $15,000; and would also give him $2,500 in money to educate him and build a dwelling house upon the land for the child; that she accepted the proposition and carried it out; that Boyle Doty laid off the land to the child; and set it apart as the tract of land which he had given to the infant, and, in accordance with the contract, built a dwelling house upon it, and put the child in possession of the house and land, which was still held by him. He prayed that the title to the land be conveyed to him, or, if this could not be done, for judgment for the value of the land and the $2.500, the amount agreed to be given for his education. The allegations of the petition were denied by the defendants, and on final hearing the court entered a judgment in favor of the child for $2,500, with interest from May 2, 1902; also for $6,720 for the value of the land, with interest from December 1, 1903. From this judgment the defendants have appealed, and the plaintiff has taken a cross-appeal.

The first question to be determined relates to the competency of Annie James, the mother and guardian of the child, to testify to the contract between her and the deceased on which the action is based. · It is insisted for appellants that she is testifying for herself as to a transaction with one who is dead, and is therefore incompetent under section 606 of the Civil Code, for the reason that she is liable for the costs of the action, and is entitled to compensation for her services as guardian. It is also insisted that she is the real actor in the suit, and is therefore testifying for herself. In support of this view we are referred to Smick v. Beswick, 24 Ky. Law Rep., 276, 68 S. W., 439; Miller v. Cabell, 81 Ky., 178, 4 R., 962; and Hobbs v. Russell, 79 Ky., 61, 1 R., 329. It was held in Stowers v. Hollis, 83 Ky., 544, 7 R., 549, that the mother of a bastard is a competent witness for the child to prove a contract by the father with her for the support of the child, although he is dead when she testifies. But in that case the mother was not the guardian of the child, or party to the action. The exact question presented here was therefore not raised in that case. Subsection 2, section 37, of the Civil Code, reads as follows: "A guardian, curator, committee, or next friend who brings or prosecutes an action for a person who is under disability is liable for the costs which accrue during his conduct of the action, unless he be allowed to sue in *forma pauperis*, by an order of the court, or by an order of the judge thereof during vacation." Under this provision it was held that a guardian was personally liable for costs accruing during the prosecution of an action conducted by him. Snyder v. Fidelity Trust & Safety Vault Co., 14 Ky. Law Rep., 615. But by the ninth section of the act regulating costs, approved May 27, 1892, which is now section 892, Ky. St., 1903, it is provided as follows: "A personal representative, guardian, assignee, curator, committee, or trustee in an action shall,

if unsuccessful, be adjudged to pay costs as other litigants. The judgment for costs in such case shall only be against the assets which have, or may come to his hands." This act, being subsequent to the Code, repeals its provisions in so far as they are in conflict therewith, and under it any judgment rendered herein against the guardian for costs must be only against the assets which have or may come to her hands. She is not, therefore, personally liable for costs. In Smick v. Beswick's Adm'r, 24 Ky. Law Rep., 276, 68 S. W., 439, it was held that an attorney who was to receive a sum equal to one-half the recovery, and was to get nothing if he failed to recover, could not testify for the plaintiff as to a transaction between him and the decedent. The attorney was equally interested with his client in the result of the case, and every rule of law which closed the mouth of the client would apply equally to the attorney. By section 2036, Ky. St., 1903, it is provided: "The guardian, besides all necessary disbursements and repairs, shall be allowed by the court a reasonable compensation for his services." Every witness summoned by the plaintiff would, to the extent of his witness claim, be interested in the result, if the guardian would be interested because of her right to compensation for her services. She is entitled by law to a reasonable compensation for her services, but is given no right to any part of the fund recovered. Her trust may be terminated before any part of it comes to her hands. In New York Life Insurance Company v. Johnson's Adm'r, 24 Ky. Law Rep., 1867, 72 S. W., 762, it was held that a policy holder in a mutual company, who thus participates in the profits of the company, may testify for the company as to a transaction with a decedent, on the ground that the disqualifying interest, to exclude the witness, must be direct and certain, and that an uncertain or remote interest will not disqualify. In Eisenlord v. Clum, 27 N. E., 1024, 12

L. R. A., 836, the New York Court of Appeals held the mother competent in an action by the son to establish her marriage with his father, although, if this fact was established, she would be entitled to dower in the land sued for; the court ruling that the judgment in favor of the son would not be evidence in her favor in an action for dower. In 1 Greenleaf on Evidence, section 389, in summing up those who are competent, though remotely interested, this is given, "A creditor for his debtor;" and in section 390 the rule is stated as follows: "The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment or that the record will be legal evidence for or against him in some other action. It must be a present, certain, and vested interest, and not an interest uncertain, remote, or contingent." We therefore conclude that her right to a reasonable compensation for her services was insufficient to disqualify the witness. For she was entitled to the allowance for her services whether the case was won or lost. Her interest was not directly in the result of the action, although the ward's estate might be able to pay her if the suit was won, and unable to pay if it was lost. This indirect interest in the recovery went to her credibility, and not to her competency. Were the rule otherwise, no person holding a claim could testify for the debtor as to the acts of one who was dead when the testimony was given.

It remains to determine whether the witness was incompetent to testify because she was, as guardian, a party to the action as relator. In Miller v. Cabell, 81 Ky., 178, 4 R., 962, it was held that the guardian of an infant is an indispensable party to an appeal from a judgment obtained in a proceeding instituted in the name of the infant by him as guardian, and in that case the court said that, "where the guardian of an

infant sues for him, he is the real actor, and the court has no power to displace him, unless his interest is in some manner hostile to the infant, or he is prosecuting the action in bad faith, and without regard to the interest of the infant." In Hobbs v. Russell, 79 Ky. 61, it was held that an executor, who was also one of the devisees, when sued as executor, could not testify for himself as to a transaction between him and a decedent. This case was followed in Witt v. Thomas, 19 Ky. Law Rep., 847, 42 S. W., 338, where the administrator was also the sole heir at law. But in Swinebroad v. Bright, 25 Ky. Law Rep., 742, 76 S. W., 365, where the executor was sued by one of the devisees, and it was simply a question as to which of the devisees was entitled to the fund, it was held that the executor and his surety could testify as to a declaration of the decedent on the ground that he had no interest in the fund, as he had to pay over the fund in any event to one devisee or the other, and that the statute was aimed to widen, not to narrow, the competency of witnesses. So in Michigan it is held that an executor who has no personal interest in the controversy, which is simply between the estates of two deceased persons, may testify for his estate, although a party to the action. Penny v. Croul, 49 N. W., 311, 13 L. R. A., 83. See, also, Devol v. Dye, 123 Ind., 321, 24 N. E., 246, 7 L. R. A., 439. On the other hand, it is well settled that a person, though not a party to the action, can not testify as to transactions with a decedent if he is interested in the result. Thus the distributees of an estate are not competent witnesses for the administrator. Manion v. Lambert, 73 Ky. 295. Nor are the beneficiaries of a fund competent for the trustee (Hopkins v. Faeber, 86 Ky., 223, 9 R., 550, 5 S. W. 749), nor persons otherwise interested, in fact ((Hinkson v. Wigglesworth, 20 Ky. Law Rep., 1161, 48 S. W., 1079; Whit-

low v. Whitlow, 22 Ky. Law Rep., 1179, 60 S. W., 182). It will thus be seen that it is interest in fact in the controversy that disqualifies a witness, and not the mere fact that he is or is not a party to the action. Swinebroad v. Bright, 116 Ky., 514, 25 Ky. Law Rep., 742, 76 S. W., 365.

The plaintiff in the case before us is David Irvine Doty. The recovery is his. The guardian may be removed by the county court at any time. Her only power is to protect the rights of the infant while she is guardian. If she were to resign as guardian on learning that her testimony was necessary to protect his interest, and another were appointed in her stead, she could, after she was removed, and when another had been substituted in her place as guardian, testify for the infant in the action. Stowers v. Hollis, 83 Ky., 544, 7 R., 549. The infant is under fourteen years old. He has no voice in the selection of his guardian, and no control over the appointment. The action of the county court in appointing a guardian for him, or the failure of the guardian to preserve his interests by resigning, should not be allowed to destroy the infant's rights. Infants are the wards of the chancellor, and no construction of the statute should be adopted which would be prejudicial to their rights, unless required by its language. If the mouth of the infant's most important witness can be closed by that person's being appointed his guardian, then the rights of infants may be often sacrificed by the statute that was designed for their protection. The language of the statute is, "No person shall testify for himself," etc. The witness here is testifying for the infant, and not for herself, in the ordinary sense in which these words are commonly used. The meritorious cause of action is in the infant, and in him alone. He can not testify for himself as to the transaction with the decedent, and as his mouth is closed by the law when the decedent's mouth is closed by death, he and the decedent are

placed upon equal footing. The administrator or executor holds the legal title to the personal estate of the decedent. The devisees or distributees take the title from him, and where he, in his fiducial capacity, has a transaction with another who afterwards dies, the principle of mutuality which underlies the statute forbids that he should testify as to what occurred between him and the person who is dead. Alexander v. Alford, 89 Ky., 105, 12 R., 363, 20 S. W., 164. But the title to the ward's estate is in the ward. A guardian can not sue in his own name except on a contract made with him as guardian. He has no legal interest in his ward's estate. When he sues in his own name as guardian on a contract made with him in that capacity he can not testify for himself as to a transaction with one who is dead, for there he is personally liable for the negligent loss of the ward's estate and for the costs, or for any misconduct as guardian; and in such case he can not by resigning and having another substituted in his stead as guardian make himself competent, for by subsection 9 of section 606 of the Code, the assignment of a claim by one who is incompetent to testify shall not make him competent to testify for the assignee. The transaction here sued on was not had by Annie James as guardian. The cause of action is in the child. She is in no event liable for anything. The court might, for cause, displace her in the action as guardian, and appoint a next friend to conduct it for the infant. If she had resigned as guardian, and another had been appointed, or if, to protect the rights of the infant, the court had substituted a competent next friend to conduct the action for the infant in her stead, the cause of action being in the infant, her successor would not have derived his powers from her, and she would not have been incompetent to testify under the provision of the statute referred to relating to assignments of claims. In view of the palpable policy of

the statute to open the doors and let witnesses testify, leaving their credibility for the tribunals before whom the evidence is given, and in view of the helpless condition of infants, and the policy of the law to protect their interests, and throw around them safeguards to prevent their suffering from cunning or ignorance, we conclude that the construction of the statute contended for would be contrary to its spirit and purpose, unduly imperiling the rights of infants, and that the court properly overruled the exceptions to the testimony of Annie James, leaving the matters relied on to go to the credibility of the witness.

The case of Mason v. McCormick, 75 N. C., 263, relied on for appellants, was decided under a statute materially different from ours. There the statute provided that no party should testify, and, in addition, that was the case of a next friend suing for an infant, and, as such, personally liable for the costs of the action. The only possible interest the witness here has is in her commissions as guardian, and objection on a similar ground could be made to every witness who has a debt or claim of any sort against the ward's estate: This is too uncertain an interest to disqualify a witness.

It is insisted also for appellants that the evidence as a whole fails to sustain the claim of appellee, but we must give some weight to the finding of the chancellor. The evidence is conflicting. If we look at the evidence produced by the appellants alone, the case seems entirely without merit, and, if we take alone that for the appellee, it seems to be clearly made out. The testimony of Annie James establishes the contract as set out in the petition. Her deposition shows her to be a woman of good common sense, and there is a sincerity about her testimony that is impressive, especially in her explanation of things relied on to contradict her. She is sustained by a large number of witnesses who show beyond question that

the intestate recognized and treated the appellee as his son, declaring his purpose to give him the property, and a number of the witnesses repeat declarations of the intestate that bear on their face inherent evidence of their truth. That he laid off the piece of land for the boy seems pretty clear, and that he built the house for him, and not for himself, we think is evident from the proof, for he did not entertain the intention of moving to the house or living in it himself, and was fretted when, on his return home, he found his things had been moved up to the new house. Besides all this, his brothers, who lived near him, had little to do with him, on account of the life he led; and he seems not to have been on intimate terms with any of his relatives, or to have entertained a warm affection for any of them. On the contrary, there was more or less estrangement. He would naturally feel an interest in his only son, and would feel more obligation to provide for him, because of his unfortunate position, as well as his helpless infancy. To believe that he did not entertain this purpose would be to reject the testimony of a large number of witnesses, and deny to the intestate that goodness of heart and innate sense of justice which the proof in the record shows he possessed. He was evidently attached to the child, and the proof by a number of witnesses shows that he contemplated educating him and giving him a position in the world. In his last sickness he sent for his friend Stone Walker to write his will, and, when he found that Mr. Walker was away, he asked his friend Dr. Harris to write his will, but the doctor declined, saying he should get a lawyer, and, when Mr. Walker returned, he was too sick to make a will. While it does not appear what he wished to put in the will, the fact that he desired to make a will is at least some evidence confirmatory of the testimony of the number of witnesses testifying to the provision he intended to make for the boy. The child was the

natural object of his bounty, for he recognized him and treated
his as fully as his son as if he had been born in wedlock. He
had been born and reared in his house, and naturally the in-
stinctive yearnings of a father's heart must have gone out
for his helpless child, who at the time of the contract was only
about nine years old. In view of all the facts, we think
the chancellor properly held that the contract as alleged was
made.

It is further insisted, however, for appellants, that the con-
tract, if made, contemplated the continuance of the illicit re-
lation which theretofore existed between the intestate and
Annie James, the mother of the child. The rule is that a con-
tract made in consideration of future illicit intercourse is void,
and that it is also void if made in contemplation of a state of
concubinage, or if the illicit relationship was understood by
the parties to form a part of the contract. Lytle v. Newell,
24 Ky. Law Rep., 188, 68 S. W., 118; McDonald v. Fleming,
51 Ky., 285. There are facts in the record tending to sustain
this view of the contract, but it is also capable of the other
construction. If this were a suit by the mother for her services
we have no question the principle should be applied, but it
is not a suit for her services. It is a suit by the child. The
evidence leaves no doubt that, when the mother left Missouri,
she left with the purpose of returning to Doty's house and re-
suming her old place there. He met her at Richmond, and
took her and the child home in his buggy. She needed no in-
ducement to return home. She had come from Missouri for
that purpose. Her letters introduced by appellant show this
beyond question. The object of the contract was not to get
her to return or to resume her old place at his house. This
was all settled. The purpose which the intestate had in view
was keeping the boy. The law gave the mother the right to
control the child. He wanted this right, and, to induce her

to agree that the child should not be taken from him any more, and should remain at his house and under his control, he agreed to make a certain provision for the child. Future illicit relations between him and the mother formed no part of the consideration of the contract. The consideration was that the mother should not put the child elsewhere, as she had a right to do, so that he might be brought up without the constant sense of his unfortunate origin. To compensate for this, Doty agreed to make a provision for the boy sufficient to educate him and make him independent. If we credit the testimony of the mother, such was the contract. It was natural that the father would want the child, and that he did want him is certainly shown by his subsequent conduct, no less than by his declarations. It was also natural that he would feel himself that, if he kept and raised that boy there in that house, where as he got older he would be made every day to feel the shame of his birth, the father should in some way adequately provide for him. The law does not presume illegality, and, in behalf of the infant, under all the facts that construction of the contract must be adopted which will make it stand rather than that which will destroy it.

On the cross-appeal it is insisted for the infant that the chancellor should have adjudged him the land, and that the recovery is too small. Title to land can not be acquired by a parol contract, and part performance will not take the case out of the statute, under the rule in force in this State. Grant v. Craigmiles, 1 Bibb, 205; Hayden v. McIlvain, 4 Bibb, 58; Holtzclaw v. Blackerby, 9 Bush, 40. The contract is not otherwise within the statute of frauds, and while appellee can not be adjudged the land, the value of the thing promised may be estimated, and compensation for the breach of the contract may be adjudged, the intestate having received the consideration upon which his promise rested. Benge v. Hiatt's

Adm'r, 82 Ky., 666, 6 R., 714, 56 Am. Rep., 912; Stowers v. Hollis, 83 Ky., 544, 7 R., 549; Mercer v. Mercer, 87 Ky., 30, 9 R., 870, 7 S. W., 401 and cases cited.

It is said there is a mistake in copying the record, and that this is shown by the transcript. The depositions were taken in shorthand, and it is said the stenographer made a mistake in copying from his notes, and that this mistake is shown by other parts of the record.

We do not see that there is enough in the record to warrant us in concluding that a larger judgment should have been entered in favor of appellee, and on the whole case, the judgment appealed from is affirmed on the original and on the cross appeal.

Whole court sitting.

Petition by appellant for rehearing overruled.