## Lewis v. Creech's Administrator.

(Decided February 16, 1915.)

Appeal from Laurel Circuit Court.

Contracts—Contract for Support of Child—Uncertainty.—A contract between the putative father and the mother of a child that the father would support, maintain and educate the child and that before he died he would make such provisions out of his estate as would make the child equal with his other children, is not void for uncertainty.

HAZLEWOOD & JOHNSON for appellant.

D. K. RAWLINGS and RAWLINGS & WRIGHT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This action is to recover damages for breach of contract. It went off on demurrer in the court below, and the plaintiff appeals. Taking as true the facts stated, as we must on demurrer, the appellant is the illegitimate daughter of Eliza Pace, and J. G. Creech was the father. At the time this suit was filed, in 1913, appellant was 40 years of age. She alleges that before she was three years old her mother contemplated instituting bastardy proceedings in the county court against J. G. Creech, as the natural father of her child, and notified Creech of her purpose. Creech owned considerable property, and had high social standing and political ambition. Being anxious to avert the consequences of such proceedings and in order to induce the mother to forbear, he thereupon

entered into a verbal contract with her, promising and agreeing, in effect, if she would not institute bastardy proceedings, he would assist her in rearing, maintaining and educating the child, "and that he would as long as he lived see that plaintiff had a competency, and that before he died he would make such provisions out of his estate as would make this plaintiff absolutely equal with his other children and an heir of his estate and financially independent for all future time."

Creech, in pursuance of that contract, did assist the mother in rearing, maintaining and educating the child, and after she reached maturity continued to help her by furnishing money and clothing. A short time before the action was instituted Creech died intestate, and without having made any provision for her "of either money or property so as to make her an equal heir of his estate, or such part thereof as his other children, or financially independent in life or set aside or provide any sum whatever for her in the future."

It is alleged that at the time of his death Creech was possessed of an estate worth at least $25,000, and left surviving him five children. She asks for damages against his estate for the sum of $10,000.

It is conceded that there is sufficient consideration to uphold the contract, and that it is not affected by the statute of frauds. But the administrator insists that the unperformed part of the contract, the part quoted, is too indefinite and uncertain for enforcement, and, therefore, no damages can be recovered for its breach. Furthermore, it is urged that a contract to make one an heir, or rather a contract to adopt a child, is against public policy, and, therefore, void. There does not seem to be much difference of opinion between the parties in construing the contract, or in their methods of construction. Both agree that the intent of the parties should govern, and that it is evident from the contract that the plain intent of John Creech was, at some time before his death, by gift, will, or adoption, to put appellant on the same footing with his other children as to property.

Appellee argues that this intent, as expressed in the agreement, is too indefinite and uncertain, because it is impossible to fix or ascertain the amount which Creech intended and agreed to pay over or set apart for her benefit, since Creech at the time had no idea how many children he would have, or who would be ca-

pable of inheriting. We find ourselves unable to accept this reasoning. As he left surviving him five legitimate children, there is no uncertainty now as to what part of his estate each of the five is entitled to. There can be no less certainty about how much each will be entitled to if his estate is equally divided between six children. It is true, at the time the contract was made, the parties did not determine just how much of his estate, that is, the proportion this natural child would take, nor how much of his estate he would set apart for her if he made the provision by gift before his death, but the contract provides a basis for determining the portion—he would make her "equal with his other children." The number of children he had at the time when he would make the gift or will would control or else the number he left surviving would fix the measure of damages. Of course, how much estate he would accumulate or leave for distribution was uncertain at that time, but there is no uncertainty about it now. Uncertainty as to amount could have been urged as well to a contract agreeing to set over or devise his whole estate. Mercer v. Mercer, 9 Ky. L. R., 884, was a suit in assumpsit by illegitimate children to recover of the estate of their putative father, and under a contract made "in consideration of his relationship and the natural and moral duty resting upon him to support and educate them, promised to give and secure to them thereafter his entire estate, less $10,000, to be given to another illegitimate child." It did not appear that any bastardy proceedings were contemplated or that there was any agreement to forbear. The only consideration alleged was moral duty of the putative father to support and educate the children. While the court held that this consideration was insufficient, yet there was no criticism of the contract for uncertainty. Had there been sufficient consideration, the contract, as indicated in the opinion, would have been upheld upon proper proof of its making.

That part of the contract where Creech undertook to make the plaintiff "financially independent for all future time," is, of course, indefinite, but that would not render the remainder of the contract unenforcible if definite. In fact, we regard his promise to make her an heir of his estate and financially independent as matter of description, and tends to show the inducement he offered the mother to secure her forbearance; that is,

he told her, and incorporated it into the contract, that when he provided for the child equally with his other children, she would be the same as his heir, and would be financially independent.

The case of Benge v. Hiatt, 82 Ky., 666, was based upon a contract made by the mother of an illegitimate child and its putative father. In consideration that the mother would and did surrender the custody of the child to the father, he promised to rear and educate it, and, in addition thereto, would give the child $1,000 in money and the tract of land on which the father then lived of the value of $2,700. The consideration was deemed sufficient, and, although the contract was oral, and, therefore, the promise to convey land was not enforcible, yet the court held that the child was entitled to recover its equivalent in value, not as the measure of damage for the failure to convey the land, but as constituting in part the standard of value agreed on by the father for the forbearance and relinquishment or surrender of the child by the mother. We are unable to see that the value of a one-sixth part of Creech's estate is any more uncertain or difficult of ascertainment than the value of the land in the Hiatt case.

Turning now to appellee's contention that this is an agreement to make one an heir-at-law, and is, therefore, unenforcible and void, we are cited to the case of Davis v. Jones' Admr., 94 Ky., 320. In that case George Jones agreed with the mother of the infant that if she would surrender to him the custody, care and control of a child—not his own—that he would clothe, support and educate her, "and make her his heir-at-law, so that she could inherit all of his estate." Jones died in a short time without adopting her, and damages were claimed for breach of the contract. This court affirmed the ruling of the lower court in sustaining a demurrer to the petition. Such agreements were held to be against the policy of the common law, because "heirship is controlled by the law of descent, having for its basis the degree in blood, etc., and such agreements as that sued on in this case would put the estate in a different channel than that fixed by the law of descent."

Quoting again:

"But the Legislature of this State has seen proper to authorize certain parties to make persons not related to them their legal heirs upon certain conditions by

petition to the county court having jurisdiction, and it has been settled by this court that the authority thus given is the only authority existing in this State by which one person can make another his legal heir."

But Jones was not the father of the child in question, nor was he related to it. Aside from the contract he was under no moral or other obligation. The child was a stranger in blood, and, as the court said, the Legislature has seen proper to provide a means whereby one may make a person not related to him his legal heir. The Legislature has also seen fit to provide a means for imposing upon a natural father the expense of maintaining his illegitimate child.

But the case at bar is not a suit for adoption, nor to have a judgment declaring the plaintiff a legal heir of Creech. There is no attempt to have the cloud removed from her paternity. It is a prayer for damages for his failure to make such provision out of his estate as would equalize her with the other children who were his heirs, and the claim for damage grows out of the contract whereby the mother of the child agreed not to adopt the statutory method of imposing upon him the expense of the child's maintenance. In other words, she accepted his verbal promise in lieu of the statutory remedy.

We have reached the conclusion that the facts stated in the petition are sufficient to support a cause of action for damages. If the contract be sustained by the evidence, the measure of damage is a sum sufficient to make her equal with the other heirs of John Creech.

The judgment of the lower court is, therefore, reversed for further proceedings consistent with this opinion.