## Haralambo's Administrator v. Christopher.

(Decided November 19. 1929.)

BRADSHAW, MACDONALD & McMURRY for appellant.

GRAVES & HOLMAN and BEN S. ADAMS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Chris Haralambo died a resident of Paducah on February 6, 1928, the owner of real estate in Paducah of value about $50,000. By his will he disposed of his entire estate, devising to a nephew, Mike Christopher, $500. Mike Christopher on August 9, 1928, brought this action against the executor of the will, alleging that on or about April 1, 1911, he and the deceased entered into a contract by which plaintiff took charge of, managed, and operated, a moving picture show business in Mississippi and continued in charge thereof for a period of 10 years, and that by the contract it was agreed that the profits of the business were to be equally divided between them, but that he should send all of the net earnings to the decedent at Paducah and the decedent would invest the money in good real estate in Paducah, and upon the death of the decedent he would, by will, devise all the real estate so bought and its accumulations to the plaintiff. He alleged that all of the real estate owned by the decedent at his death was so bought, and prayed judgment against the executor for the value of the real estate owned by the decedent at his death, $50,000. The executor filed answer denying the allegations of the petition. The case came on for trial. The jury returned a verdict for plaintiff in the sum of $12,000 on which judgment was entered, and the defendant appeals. The facts shown by the proof are these:

Chris Haralambo was a Greek. For many years he traveled with Buffalo Bill operating a concession in the

552

tent. Finally he bought a moving picture show himself, which he and Wesley A. Crouch operated for some time; Crouch being his employe. In the fall of 1910 he learned that Mike Christopher, his sister's son, had come from Greece and landed in New York. He advertised for him in the Greek papers, and, as the result, Mike Christopher came to Mississippi, where his uncle was operating his show; he was not of age. His uncle put him in charge of Crouch to go with the show and help and to learn English. Not long after this the uncle came to Paducah and bought a half interest in a fruit and confectionary store operaed by James Vlaholeas, who was also a Greek. He stayed there that winter looking after the store while Crouch was running the picture show at a salary of 15 per cent. of the profits. In the spring of 1911 the uncle bought out Vlaholeas, and, when Crouch and his nephew came up, Crouch testifies that an agreement was made between the uncle and nephew, substantially as set out in the plaintiff's petition, and that the nephew returned with him to Mississippi and operated the show and he sent all the net profits, after deducting his pay and other expenses, immediately to the deceased in Paducah. This continued until Mike Christopher joined the state militia of Mississippi in June, 1916. The uncle was very much put out at this, but, after he and Christopher talked it over, he agreed, as Crouch testifies, that Christopher might go on in the army and Crouch and his wife run the show, their pay to be 20 per cent. instead of 15 per cent. as theretofore, and he would carry out the agreement with his nephew as before. The nephew soon after this went to Mexico with the army, and when he returned went to France, and in fact was never with the show any more. In November, 1919, the uncle sold the show to Crouch for $875, the tent being then in bad condition. In his will, which was executed November 25, 1925, the uncle said that he did not know where Mike Christopher was. The court by its instruction told the jury that, if they found for the plaintiff, the measure of damages was the fair market value of the property that the deceased owned at the time of his death in the city of Paducah, less any indebtedness of the deceased, but in no event to exceed $50,000, the amount claimed in the petition.

In Duke v. Crump, 185 Ky. 325, 215 S. W. 41, 42, the court thus states the rule as to the measure of damages

in a case like this: "It is well settled that an oral agreement to devise real estate to another in consideration of services to be performed is within the statute of frauds, and cannot be enforced. Bobbitt v. James, 148 Ky. 244, 146 S. W. 431; Speers v. Sewell, 4 Bush. 239; Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 51 L. R. A. (N. S.) 907. However, the party performing the services is not without. a remedy, but may recover the reasonable value of his services. Bobbitt v. James, supra; Speers v. Sewell, supra; Myles' Ex'rs. v. Myles, 6 Bush, 237; Usher's Ex'r. v. Flood, 83 Ky. 552; Boone v. Coe, supra. While it is true that there is a class of cases holding that for a breach of a contract to devise the measure of recovery is the value of the property agreed to be devised, it will be found that that rule is confined to cases where the benefit to the intestate cannot be measured in money, and there is no way to determine the amount of recovery except by the pecuniary standard fixed by the parties to the contract. Berry v. Graddy, 1 Metc. 553; Benge v. Hiatt's Adm'r., 82 Ky. 666, 56 Am. Rep. 912; Doty's Adm'rs. v. Doty's Guardian, 118 Ky. 204, 80 S. W. 803, 26 Ky. Law Rep. 63, 2 L. R. A. (N. S.) 713, 4 Ann. Cas. 1064." To same effect see Walker v. Dills, 186 Ky. 638, 218 S. W. 247; 40 Cyc. 1069; 28 C. J. 66; Murtha v. Donohoo, 149 Wis. 481, 136 N. W. 158, 41 L. R. A. (N. S.) 246, and notes.

The basis of the rule is that the statute of frauds (Ky. Stats. sec. 470) is a shield, not a sword. The fact that the consideration has been received is the basis of the recovery. It is only permitted for this reason. There are a few cases where the consideration received cannot be measured in money, as in Berry v. Graddy, 1 Metc. 553; Doty v. Doty, 118 Ky. 220; 80 S. W. 803, 26 Ky. Law Rep. 63, 2 L. R. A. (N. S.) 713, 4 Ann. Cas. 1064, and the like. But those cases have no application to a purely personal contract for services, the value of which may be readily computed in money. As the nephew rendered no services after he went in the army, the right to compensation ceased then. Anything his uncle promised to give him after this was a mere gratuity. The consideration received is the sole basis of the right of action. To give him more than the actual fair value of his services for the time that he served would be substantially to enforce the contract to this extent, which cannot be done.

The circuit court erred in allowing what is known as the "Scrap Book" to be read to the jury or any part of

554

it. The published accounts in the newspapers as to the show are purely hearsay evidence. The facts must be proved by testimony of witnesses and not by what some newspaper may have published concerning them. The letters written to appellee are likewise incompetent in his favor. The persons who wrote the letters may testify to the facts, but the letters are not competent for any purpose. The court did not err in refusing to instruct the jury as to the character of evidence necessary to sustain the contract. This was a question of law for the court. There was sufficient evidence to take the case to the jury.

It was not necessary to submit to the jury any question of the rescission of the contract. The plaintiff was entitled to recover for what he did under the contract, if there was a contract as alleged by him. But his right of recovery ceased when he ceased to work under the contract. This is like any other suit to recover damages. A personal judgment may be rendered as in other cases, there being no showing that the estate is insolvent. The admissions made by the deceased are competent against him, but his statements to the contrary, not made in the presence of the plaintiff, may not be proved in his favor, as the circuit court properly held. The facts must be proved by the testimony of witnesses who know the facts, as in other cases where damages are sought for the breach of a contract.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.