## Smith v. Wagers' Administrators et al.

(Decided March 3, 1931.)

A. D. HALL and F. P. STIVERS for appellant.

W. O. B. LIPPS, ROY W. HOUSE, D. M. ALLEN, W. W. RAWLINGS and H. H. OWENS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by the administrators of Oliver Wagers, deceased, to settle his estate, Allie Smith, who was made a party, filed an answer and counterclaim and

an amendment thereto asserting the right to share in his estate. A demurrer was sustained to the answer and counterclaim as amended and the counterclaim dismissed. She appeals.

The material portions of the answer and counterclaim are as follows:

"The defendant, Allie Smith, says that she is the spurious child of the said Oliver Wagers, deceased, and that her mother Mrs. Andy Grubb, was at the time this defendant was begotten, the wife of the said Andy Grubb; that notwithstanding the same, the said Oliver Wagers long sought and finally obtained sexual relations with the mother of this defendant, the said Mrs. Andy Grubb, and which relations finally resulted in the begetting and ultimate birth of this defendant, Allie Smith; that her mother so realized and advised the said Oliver Wagers before they separated, at the time this defendant was begotten, that said Wagers had begot her, Mrs. Andy Grubb, with child, and that the said Wagers then replied that 'he hoped he had' and he hoped it would be a girl, that if it proved to be a girl he would give it $5,000.00, and if it proved to be a boy he would give it $2,500.00."

"That after defendant was born her mother importuned the said Oliver Wagers to give her $5,000 for this defendant, and said Wagers so delayed action until the mother of this defendant told the said Wagers, on a Sunday 'that if she lived to see Monday, the following day, she would go to Manchester, Kentucky, and swear that this defendant is the child of the said Oliver Wagers, that she would not raise a child and not let the world know who is its father,' whereupon the said Oliver Wagers replied: 'I would not have you do that for the world, it would ruin me. If you will not go to Manchester, and swear said child, this defendant, is mine, and make it public to the world I will help you raise it and make it an equal heir with the rest of my children.' Meaning thereby he, the said Oliver Wagers, would help this defendant's mother raise this defendant, and would make this defendant an equal heir with the rest of his children, if the defendant's mother would not swear that this defendant is the child of the said Oliver Wagers, and make it public

to the world, that this defendant is the child of the said Oliver Wagers.

"The defendant, Allie Smith, says that her mother agreed to same, and kept her part of said contract, and never come to Manchester the following day or at all and swore this defendant is the child of the said Oliver Wagers, and never at any time swore that this defendant is the child of the said Oliver Wagers, and never at any time made it public to the world that this defendant was the child of the said Oliver Wagers, and never at any time violated or broken her part of said contract of agreement, but fully kept and performed same; and she says that the said Oliver Wagers kept and performed his part of said contract of agreement to the extent only, that the said Wagers helped this defendant's mother raise this defendant, but violated and broken his part of said contract, in that said Wagers never made this defendant an equal heir with the rest of his children, or any heir in his estate.

"The defendant, Allie Smith, further avers that her mother never had sexual relations with any other man save the said Oliver Wagers for more than three months next before, and for more than four months next after this defendant was begotten.

"The defendant, Allie Smith, further avers that the contract above mentioned between the said Oliver Wagers and the mother of this defendant transpired within less than one year next after the birth of this defendant."

Omitting the prayer, the amendment reads as follows:

"Comes the defendant, Allie Smith, and amends her answer and counterclaim herein, in that she adopts, reaffirms and makes a part of this amendment each and all the allegations and statements contained in her original answer and counterclaim, and moreover says that she is at this time less than thirty years old; and that Andy Grubb who was the husband of the mother of this defendant at the time this defendant was begotten, was at said time that this defendant was begotten, old and infirm.

"She further avers that at the time the said Oliver Wagers sustained sexual relations with the

mother of this defendant, as aforesaid, he was a widower, a very wealthy man, a power in business life in various enterprises in this county, and the most influential man in this county, and continued as such for many years thereafter."

The law applicable to cases of this kind may be summarized as follows: The mere promise of a father to the mother of his illegitimate child to provide for the child out of his estate is without consideration and cannot be enforced. Mercer v. Mercer's Adm'r, 87 Ky. 30, 7 S. W. 401, 9 Ky. Law Rep. 884; but, if there be other consideration for the promise, such as the mother's agreement not to take the child away, but to permit him to live with his father, this will be sufficient to support the promise, and the promise will be upheld, Doty's Adm'rs v. Doty's Guardian, 118 Ky. 204, 80 S. W. 803, 26 Ky. Law Rep. 63, 2 L. R. A. (N. S.) 713, 4 Ann. Cas. 1064. Another rule is that a promise by a father to provide for his illegitimate child out of his estate in consideration of the mother's agreement not to institute bastardy proceedings against him is valid and enforceable. Lewis v. Creech's Adm'r 162 Ky. 763, 173 S. W. 133; Burgen v. Straughan, 7 J. J. Marsh, 583; Clarke v. McFarland, 5 Dana, 45; Benge v. Hiatt, 82 Ky. 666, 56 Am. Rep. 912; Stowers v. Hollis, 83 Ky. 544; Puthuff v. Sewards, 9 Ky. Law Rep. 578.

It is sought to bring this case within the last mentioned rule. The statute authorizing a woman to proceed against the father of her bastard child is confined by its terms to unmarried women, and may not be invoked by a woman unless she be single at the time the child is begotten. Section 167, Kentucky Statutes. There is every reason why the statute should be strictly construed and not extended so as to put it in the power of a married woman to accuse some one other than her husband of being the father of her child. Here it is admitted that appellant's mother was married and had a living husband at the time appellant was begotten, and at the time she agreed not to institute bastardy proceedings. That being true, she could not invoke the statute, and the only consideration for the alleged promise was the fear of exposure and the threat which she did not have the legal right to carry into effect. We have no hesitation in holding these circumstances insufficient to support the promise. Laying them aside, we

have left only the promise, and that without more is not enforceable. Mercer v. Mercer's Adm'r, supra.

It follows that the demurrer to the answer and counterclaim as amended was properly sustained.

Judgment affirmed.