# Stevens v. Niblack's Administrator.

(Decided June 12, 1934.)

R. R. CRAFT and REID PREWITT for appellant.

W. B. WHITE and J. J. WINN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Suing by his next friend and mother, Katherine Stevens, Vivian Eugene Stevens brought this action against J. W. Niblack's administrator to recover the sum of $10,000 for breach of a contract by which J. W. Niblack, his alleged father, agreed to leave and devise to him all of his estate both real and personal. At the conclusion of the evidence the court directed a verdict in favor of the defendant, and plaintiff appeals.

Briefly stated, the facts pleaded are these: On February 13, 1931, Katherine Stevens went to the home of Vivian Niblack, who lived with his sister and two brothers, to help in the housework. During the months of April and May, 1932, she yielded herself to Vivian Niblack and became pregnant. When she and Vivian Niblack learned about June, 1932, she was pregnant with child, they entered an agreement to be married to each other, said marriage to be consummated before her delivery, and they further agreed for her to remain at the Niblack home to do and help do the work in and about the house; at the same time they expressed their mutual love and affection for each other. Vivian Niblack promised and agreed to take care of this plaintiff and

his mother, and to give, leave, and devise to this plaintiff all of his estate, both his money and his property, real and personal; that she remained at said Niblack home and did and helped do the housework until January, 1933; that at all times from the date of her engagement to the said Niblack until his death, she was able, ready and willing to marry said Vivian Niblack; that on September 7, 1932, said Vivian Niblack died suddenly without giving, leaving, or devising his money and property, or either of them, to this plaintiff, or in any manner providing for this plaintiff and his mother. Plaintiff says that by reason of the failure of his father, Vivian Niblack to give, leave, and devise his estate, including both his money and property, to him, he has been damaged to the extent of $10,000, the value of the estate; that said $10,000 are due him under the contract that his father, Vivian Niblack, made with his mother, Katherine Stevens, for his benefit.''

In support of the allegations of the petition, Katherine Stevens testified in substance as follows: She went to the home of Vivian Niblack and began doing the housework. During the months of April and May, 1932, she had, intercourse with him several times. In the month of June following, Vivian brought her, to town to see a doctor, and she then discovered that she was pregnant. On the Monday following her visit to the doctor she had a conversation with Vivian. In this conversation ''he promised that he would marry me and take care of me and the child, and if the child got here all right he would see that the child got what he had, his money and property.'' Later she had other conversations with him about the unborn child, and ''he always told me not to worry for he would marry me and take care of me and the child, and if the child got here all right he would see that it got what he had, his money and property.'' The child was born on February 2, 1933, and Vivian Niblack was the father of the child. Vivian died suddenly on September 7, 1932. The child was born at the Niblack home. After remaining there about two weeks, she left. . She never had intercourse with any one else at any time. Prior to going to the Niblack home she stayed with her aunt, and left because her aunt would not allow her to have company. Her aunt objected to the man she was keeping company with. She never saw him any more after she left her aunt, but wrote to him. There was other evidence that Katherine

Stevens was frequently seen in company with Vivian Niblack.

Whatever may be the rule in other jurisdictions, it is the settled rule in this state that a mere oral promise of the father to the mother of his illegitimate child to provide for the child out of his estate is without consideration, and cannot be enforced, Mercer v. Mercer's Adm'r, 87 Ky. 30, 7 S. W. 401, 9 Ky. Law Rep. 884. But if there be other considerations for the promise, such as the agreement of the mother not to take the child away, but permit him to live with his father, or not to institute bastardy proceedings against the father, the promise is valid and enforceable. Doty's Adm'rs v. Doty's Guardian, 118 Ky. 204, 80 S. W. 803, 26 Ky. Law Rep. 63, 2 L. R. A. (N. S.) 713, 4 Ann. Cas. 1064; Lewis v. Creech's Adm'r, 162 Ky. 763, 173 S. W. 133; Smith v. Wagers' Adm'rs, 238 Ky. 609, 38 S. W. (2d) 685. The question presented is, whether the facts pleaded and proved show a consideration for Vivian Niblack's alleged promise to leave his estate to his unborn child. The argument is that the agreement to marry was a sufficient consideration. It was not proved that the reputed father told the mother that if she would marry him he would marry her, and leave his estate to the child. The evidence goes no further than to show that the father promised that he would marry the mother and take care of her and the child, or always told her not to worry for he would marry her and take care of her and the child, and if the child got here all right he would see that it got what he had, his money and property. In short, we have two promises by the father without any corresponding promise or obligation on the part of the mother. In the circumstances it hardly can be said that a case of mutual promises, the one being a consideration for the other, was made out.

But, if we go further and assume that the evidence was sufficient to show that marriage was the consideration for the father's promise to take care of and leave his property to the child, we are then met by the statute of frauds, declaring that no action shall be brought to charge any person upon any agreement made in consideration of marriage, except mutual promises to marry, unless the agreement or some memorandum or note thereof be in writing and signed by the party to be charged therewith, or by his authorized agent. Kentucky Statutes, sec. 470, subd. 5. In Potts v. Merrit, 14

B. Mon. 406, we held that an oral antenuptial agreement that the wife should retain her title to her slaves and have the control and the power of disposition of them after marriage was within the statute. In Mallory's Adm'rs v. Mallory's Adm'r, 92 Ky. 316, 17 S. W. 737, 13 Ky. Law Rep. 579, we applied the same rule to an oral antenuptial contract stipulating that neither party should have any interest in the property of the other by reason of the marriage. In Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165, we held that an oral antenuptial agreement to give a wife a certain sum of money in consideration of marriage was not enforceable. In Glazebrook v. Glazebrook's Ex'r, 227 Ky. 628, 13 S. W. (2d) 776, we held that a parol antenuptial agreement, whereby each of the parties renounced interest in the other's estate as survivor and retained control of his or her separate estate, was void under the statute as an agreement made in consideration of marriage. Indeed, the general rule is that any promise for which the whole consideration or part of the consideration is either marriage or a promise of marriage is within the statute, except mutual promises of two persons that are exclusively engagements to marry each other. Restatement of the Law of Contracts, sec. 192. It is not material, we think, that the oral promise is for the benefit of a third person. The statute applies to any oral agreement made in consideration of marriage, except mutual promises to marry. One of the illustrations of the rule announced in Restatement of the Law of Contracts is that, if A, in consideration of B's marrying C, orally promised B a settlement, the promise is unenforceable, though the marriage takes place.

Complaint is made of the exclusion of certain evidence but as the case turned on the terms and validity of the alleged contract, as to which the mother was permitted to testify, its exclusion was not prejudicial error.

As the evidence did not establish a valid and enforceable contract, the court did not err in directing a verdict in favor of appellee.

Judgment affirmed.