### BRAMLETTE'S ADMX. *v.* BOYCE.

[Kentucky Law Reporter, Vol. 4—196.]

**Rule for Construing a Written Contract.**

In construing a written contract the whole of it must be considered rather than detached provisions and the intent of the parties to it, gathered from the purport and tenor of all the terms employed in it.

**Corporate Authority.**

A private corporation established in one state has the right without the consent of the state in which it is incorporated, to go into another state and there do anything it may be authorized to do by the laws of the state to which it goes.

APPEAL FROM JEFFERSON CIRCUIT COURT.

September 21, 1882.

OPINION BY JUDGE HARGIS:

Thomas E. Bramlette died in 1875. His widow was ap-

pointed administratrix of his estate. In the year 1879 this action at law was brought against her, in her fiduciary capacity, a trial was subsequently had, and a verdict and judgment rendered against her for the amount of the following "Endowment Bond," viz.:

"Southern Baptist Theological Seminary. Endowment bonds. Name, Thos. E. Bramlette; amount $1,000; post-office, Louisville, Ky., State of Kentucky, Jefferson county.

"For value received, in consideration of the future removal of the Southern Baptist Theological Seminary from Greenville, South Carolina, to Louisville, Ky., and the ample endowment of the same; and for the purpose of promoting the objects of the institution, I do hereby bind myself, my heirs, executors and assigns to pay to James P. Boyce, Treasurer of the Southern Baptist Theological Seminary, or to his successor in office, at the ——————— the sum of $1,000, in five equal annual instalments, the first on the first of October, 1873, the second on the first of October, 1874, the third on the first of October, 1875, the fourth on the first of October, 1876, and the fifth on the first of October, 1877, with interest at the rate of six per cent. per annum from the first of October, 1872.

"Provided, That the said institution shall be located within or near to the corporate limits of the city of Louisville, Ky., by the first of October following the expiration of twelve months after the sum of five hundred thousand dollars shall have been subscribed for its permanent endowment.

"Provided, further, That neither this bond nor any moneys delivered in payment thereof, nor any of the investments made of such money or moneys, nor any of the profits therefrom, shall be liable in any way for any obligations of said seminary that may have been incurred from contributions made in South Carolina or elsewhere prior to the first of October, 1872, or from any contract between the conventions which established the said seminary and the state convention of the Baptist Denomination in South Carolina, or the Furman University, or any citizens of the state of South Carolina, or any citizens of any of the other states of the United States in virtue of any contributions made by any such citizen or citizens, or by the Furman University, to the endowment fund of said seminary or to its support prior to the said first of October, 1872.

"Provided, also, That the principal of this bond, so far as paid, shall not be expended, but shall be deposited in bank or duly invested until the board or its duly authorized committee shall have ordered the removal of the said seminary to Louisville, upon the ascertainment by the said board or committee that the sum of five hundred thousand dollars has been subscribed, the trustees, however, having the right to retain and expend or pledge so much of the interest as shall have accrued, either paid or unpaid, or the income from the investments of such principal as may have been paid to the payment of the expenses of the agency work in Kentucky in raising this endowment, but not to the agency work of the other states, and also to apply any surplus of interest and income above what is needed for the agency work in Kentucky to the payment of the annual current expenses of the said seminary until the possibilities of an actual endowment of five hundred thousand dollars shall have been ascertained.

"And provided, further, That when the trustees of the said seminary and the general association of Kentucky shall have mutually resolved that it is inexpedient further to prosecute the work of the endowment and location of the said seminary at Louisville, Ky., then this bond shall become void, and any principal that has been paid in cash or in its invested form to ———— heirs, executors or assigns, together with any amount of interest or income, which may not have become due for the agency expenses aforesaid, or for the current expenses of the said seminary.

"Witness my hand and seal this 16th day of June, in the year of our Lord, 1873."

The widow appeals from the judgment. The assigned errors will not be considered separately, as each depends upon the correct construction of the writing on which the action is based, and a general consideration of its terms will solve all the material questions presented by the record.

In construing the written contract before us, the whole must be considered, rather than detached provisions, and the true intention of the parties gathered from the purport and tenor of all the terms which they have employed. Tested by this general rule the writing becomes harmonious, and the conflict between its different provisos and the promissory clause, which

would be produced by the adoption of the appellant's construction, is avoided.

In the first place the obligor agreed to pay $200, on specified days, annually for five years, and fixed the period at which the interest should begin to accrue before any of the instalments were to become due. If he did not intend the fractions of his bond to be collectible until the things mentioned in the qualifying provisions of the contract were finally done, or definitely determined, why was it not so provided? It seems to us that he contemplated the payment of the several sums on the days named, as in the second proviso it is declared in substance that neither the principal, nor any payments thereon, nor any interest or profits therefrom, are to be applied to the discharge of any obligations of the seminary created before October 1, 1872. In the third proviso the use of the principal of the bond is also forbidden until the removal of the seminary and the ascertainment by the board that the sum of $500,000 has been raised; and it clearly contemplates the payment of the principal before the performance of either of those conditions, as it declares, so far as paid, the principal shall be deposited in bank, or duly invested, and authorizes the trustees to retain and pledge or expend the interest paid or unpaid, and the income on any investment they might make of the principal, for the payment of agency expenses first, and if any sum remained after the agency expenses were paid, they were authorized to apply it to the payment of the current expenses of the seminary.

These precautionary and provident provisions made to prevent the loss of the principal, and to secure the immediate use of the interest and income to the seminary, show that the trustees were expected by Bramlette to control the principal and expend the interest, even before ordering the removal of the seminary. There is but one state of case provided for in which the bond is to become void, and that is when the trustees of the seminary and the general association of Kentucky shall resolve that it is inexpedient further to prosecute the work of the endowment and location of the seminary.

The promise to pay at specified dates which were bound, according to the magnitude of the undertaking, to come to pass before the $500,000 could be raised by the exercise even of the most extraordinary diligence; the requirement that the sum

paid upon the bond should be deposited if the seminary had not been removed, and its endowment completed; and the authority to the trustees to retain, expend or pledge the interest or income of the bond, demonstrate that the raising of the $500,000 is not a condition precedent to its payment.

There is ample remedy to protect the appellant from loss or misappropriation of the principal, interest or income of the bond, if there be any danger of either, as the chancellor, upon the presentation of facts showing that the removal and endowment would result in failure, or that the principal or interest on the bond might be lost or misapplied, would cause the safe deposit or secure investment of the principal, and control the proper application of the interest or income, according to the terms of the contract. In view of his express promise to pay the instalments at fixed dates, Bramlette must have known and relied upon such a remedy so clearly pointed out in the third proviso of the bond.

As no equitable ground based upon either of the hypotheses above suggested was relied upon by the appellant, and her defense embraced alone the legal construction of the bond, we do not think the court erred in its instruction to the jury, as the raising of the endowment fund is not a condition precedent to the collection of the bond executed for the purpose of producing it, and the proof shows that the seminary had been moved to Louisville.

The objection that the removal is illegal in the absence of the consent of the legislature of South Carolina is unavailing to the appellant for several reasons. Her testator united in procuring the removal to be made. As the removal is an accomplished fact, it involves no such violation of sound public policy as renders his contract void or voidable, were it admitted that the state of South Carolina, complaining in her sovereign capacity, could, by proper procedure, have prevented the removal. It is too late for the appellant to interpose this objection.

It is an undisputable proposition that a private corporation established in one state has the right, without its consent, to go into another state, and there do anything it may be authorized to do by the laws of the latter state. As the state of South Carolina is not complaining, and the state of Kentucky has authorized the seminary to be located in or near Louisville, and in

pursuance of that authority the location has been made, thereby rendering the corporate existence of the institution both legal and perpetual in this state, there remains to appellant no legal or equitable grounds of complaint on that head, the corporation being purely private and possession no element that might render the removal a subtraction from the sovereignty of our sister state of South Carolina. It is insisted by appellant's counsel that the death of Bramlette, before the removal of the seminary, revoked his promise.

Considering the general plea of no consideration as sufficient to raise that question, we will state the facts on which it is made, and present our views. Bramlette died in 1875, and the removal was not made until 1877. It does not appear that the trustees or agents of the seminary expended any money or incurred any legal liability by reason of the removal, or in contemplation of the removal, until after the death of Bramlette.

If the only object of the subscription had been to pay for the removal of the seminary without a corresponding legal obligation on the part of the trustees to remove it, Bramlette's death would in law have revoked his promise if the seminary had not been removed or money expended, or legal liabilities incurred for the purpose of its removal. Then, to that state of facts, the case of *Pratt v. Trustees of the Baptist Society,* 93 Ill. 475, and authorities therein cited, would have been applicable and conclusive.

But the removal of the seminary was not the only object, nor indeed was it the most important purpose of the subscription. It was made to aid, also, in raising an ample endowment of the seminary, and to promote its objects. Other persons have subscribed to those objects and the endowment fund until it reaches the sum of about $370,000. Each of them had the right, in taking upon himself the obligation to pay a portion of that sum and to complete the endowment, to rely upon the good faith and validity of the promise of every other subscriber.

The trustees and their agents have performed the work and incurred the expenses necessary to raise the subscriptions already obtained, which would furnish at least a meritorious consideration that might very justly and reasonably be held to support the promise of the appellant's testator. But we are not without authority on this question, as in the cases of *Collier v.*

*Baptist Education Society,* 8 B. Mon. (Ky.) 68, and *Trustees Kentucky Female Orphan School v. Fleming,* 10 Bush (Ky.) 234, the point was decided. The court said in the latter case that "The plea of a want of consideration did not cast the burden of proving consideration upon the appellant." The note was no doubt given for a donation intended to be made to appellants, which, by Sec. 2 of their charter (Acts 1846-7, Ch. 300), they were authorized to receive. The law made it their duty to apply the fund to carrying out the charitable and benevolent purpose of the institution and the donor. This obligation furnished consideration enough to uphold the promise to pay it.

This case shows the same state of facts. The bond was given for a donation to the seminary, and the charter granted by this state (1 Acts 1876, Ch. 179) perpetuates the fundamental laws of the institution established in 1858, and authorized them to retain the property and subscription then held, and receive other property and subscriptions in the future.

It also makes it the duty of the trustees to apply the income of the property and funds of the institution to its current expenses and annual support and maintenance, and to preserve sacredly the principal "of said estate" except for permanent improvements, etc. These obligations and duties form consideration sufficient to render the promise legally enforcible. This law is founded in justice and supported by reason and sound policy.

This case is broadly distinguishable from the facts of those laid down in the authorities cited by appellant's counsel, and it does not fall within the principles they announce.

The judgment is *affirmed.*

*M. Mundy, for appellant.*

*C. B. Seymour, for appellee.*