CASE 104—CONTRACT. ILLEGITIMACY—MARCH 14, 1885,

# Benge v. Hiatt's Adm'r.

APPEAL FROM GARRARD CIRCUIT COURT.

1. A contract between the father of an illegitimate child and its mother, that if the mother would surrender to him the custody of the child during its minority, " he would maintain and educate the child, and, in addition, would give him $1,000," etc., can be enforced by the child after his father's death.

2. That part of the contract which provides that the father would give the child the tract of land on which he then lived. can not be enforced *in rem*, because it was not in writing, and also, that the land had been sold by decedent's heirs; yet its equivalent in value, fixed by the father at $2,700, may also be recovered.

Benge v. Hiatt's Adm'r.

M. C. SAUFLEY AND HILL & ALCORN FOR APPELLANT.

1. Hiatt's promise was based upon a legal and valid consideration. (General Statutes, 162; Schauber's Dom. Rel., 384; 5 Dana, 45; Oro. Eliz., 67; Selwyn on Measure Damages, 228; Parson's Cont., book 2, page 369.)

2. The contract is not within the statute of "Frauds and Perjuries." (4 Dana, 37; 9 Ib., 69; 8 B. Mon., 423; Chitty on Cont., 68; 19 Mass., 368; 21 Wis., 415; 4 Md., 476.)

3. The promise to pay the $1,000 is not within the statute of "Frauds." (26 Ala., 272; 31 Miss., 426; Sedgwick on Dam., 199; Ky. Law. Rep., October, 1883.)

WM. McKEE DUNCAN AND BURDETT & WALTON FOR APPEL-LEE.

1. Every agreement should be so complete as to give either party his action upon it.

2. There was no right of action on decedent to enforce the alleged contract. He could not have secured the possession of the child by a writ of *habeas corpus*, if it had been taken from him by the mother.

3. Such a contract as alleged is not enforceable. (Bour. S. D., title "Contract," 17; Chitty on Cont., 17; 3 Wash., R. T., 306; Addison on Cont., section 18, 652; The People v. Mercien, 3 Hill (N. Y.), 644; State *ex rel.* Mayne v. Baldwin; 1 Halst. on Chanc'y (N. J.), 454; Addison on Cont, section 13, note 1; 1 Pars. on Cont, 432 and note "t," 434; General Statutes, page 248, chapter 22, section 1, subdivisions 6 and 7; Chitty on Cont., star page 68; 3 Pars. on Cont., 36, note "g;" Addison on Cont., section 212; Davenport v. Gentry, 9 B. M. 429; Berry, &c., v. Graddy. 1 Met., 557; Holloway v Hampton, 4 B. M., 46; 1 Parson on Cont., 235; Bour. Lo.. title "Gift;" William on Ex'rs, 1770; 1 Parson on Cont., 431; Clarke v. McFarland, 5 Dana, 46; Burgen v. Straughan, 7 J. J. M., 583; City of Covington v. Powell, 2 Met., 227; 1 Pars. on Cont., 455; 3 Id., 35, 38-9, 58, note "g;" 6 Ind., 258; 7 Dowling & Ryland, 30-3; 30 Ind., 242; 31 Alabama, 564; 19 Wendell, 405.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The infant appellant, Joseph Benge, instituted this action by his next friend and guardian, against Samuel Hiatt's administrator, in the Garrard circuit court, asking a judgment for the sum of $6,700 against the estate of the intestate, by reason of a contract alleged to have been made by the mother of the infant with the intestate for the infant's benefit. The case went.

off on demurrer, and the only question presented is as to the sufficiency of the petition.

It is alleged that the mother being an unmarried woman, and the infant the natural son of the intestate, the latter being desirous of having the custody of his child, that he might raise and educate him according to his own wishes, and the child being at the time about three years of age and living with, and in the mother's custody, "the said decedent came to plaintiff's mother and proposed to, and contracted and agreed with, her as the mother and legal custodian of the child, that if she would surrender the plaintiff to him (the intestate) and permit him to have the raising, care and custody of plaintiff, during the period of plaintiff's minority, in consideration thereof the decedent would take plaintiff, clothe, protect, maintain and educate him according to decedent's pecuniary ability, and, in addition thereto, would give him $1,000 in money and the tract of land on which the intestate then lived, of the value of $2,700.

"That the contract was entered into in behalf of the plaintiff by the mother, and, in pursuance thereof, she surrendered her legal right to his custody unto decedent, who immediately took him into his custody and control, carrying him to the home of the intestate, in discharge of his contract. The plaintiff was then about three years of age, and his father, when plaintiff was about four years of age, was taken suddenly ill, speechless and unconscious, and died in a few days without making any provision for the plaintiff. That his estate was of the value of $30,000, and de-

scended to his collateral kindred, his father never having married. That the land has been sold and the administrator about to distribute the estate. He asks to recover the value of the land, $2,700, the $1,000 and the value of his future support and maintenance, $3,000."

It is maintained by counsel for the appellee that the agreement on the part of the intestate is without any consideration, and not binding on the part of the mother, and therefore the demurrer was properly sustained.

A contract must be obligatory on both parties or neither will be bound, and while this is the general rule, we are unable to perceive in what manner it affects the question before us.

That the mother was entitled to the custody of the child, to its society and labor, burdened with the care of maintaining it until able to maintain itself, will not be doubted, and when surrendering this custody to the natural father and executing- in full her part of the contract in behalf of the infant plaintiff, we see no sufficient reason for adjudging that such an act, on the part of the mother, constitutes no consideration for the promise on the part of the father.

The common law afforded no remedy as against the father for the support of his illegitimate offspring; but where such a relation exists there is a strong natural and moral obligation on the part of the father to contribute to the illegitimate child's support; and although such considerations may not be sufficient to support a mere promise to pay either money or property in discharge of this moral duty, when the

mother surrenders to the putative father the custody of the child on an express promise that he will support and maintain it, such a contract should be enforced. It must be conceded that the father can be made to respond in such a case, by reason of his contract alone, and that such a contract must be based on some other consideration than the mere natural obligation resting on him to support his offspring; and recognizing this as the rule, we are satisfied the consideration alleged, if established, authorizes a recovery. The statute of this State enables the mother to compel the father to maintain his illegitimate child, and while this statute should be regarded more for the purpose of indemnifying the State against the demands of such helpless infants for support, it nevertheless relieves the mother from the burden and compels the father to discharge a plain duty. A promise to pay for the support of the child, in the event the father will not be coerced into payment by reason of the statute, has been enforced by this court not only for what would be deemed a reasonable sum, but for a much larger amount.

In the case of Clarke v. McFarland, reported in 5 Dana, the mother agreed with the father, in consideration of her promise to forbear to proceed against him under the statute, he would from time to time make such auxiliary contributions, in money, as might be necessary for her support, and at the same time agreed that he would secure and pay to the mother, for the child, whenever requested, the sum of $10,000. This court held that the promise was binding, and that the apparent extravagance of the

promise would not authorize the court to say that it was not legally binding.

The facts alleged in this case are all to be taken as true, and the father's promise to educate and maintain his own child, and give to it money and property amounting to three or four thousand dollars, in the event he is permitted to have its custody, is not such an inadequate consideration as will imply fraud or bad faith on the part of those presenting the claim; and if the mere forbearance to coerce the father into payment is a sufficient consideration, the separation of the child from the mother and transferring the care and custody to the father is not only a sufficient consideration for the promise, but is that character of contract the value of which can not be well estimated by dollars and cents.

Here the child was actually delivered to the father, taken to his home, the latter assuming the legal responsibility of the support and education of the only object of his affection, and promising the mother, in behalf of the infant, in consideration of the surrender of her claims, to give to the child a certain specified sum of money and a home of the value of $2,700.

What higher or greater consideration could the mother have surrendered or given than the right to the care and custody of her child? The child should not be punished by reason of the crime of its parents, or the courts of law and equity closed against such contracts as, when clearly established, are based upon the plainest principles of natural justice.

The contract is therefore binding on the father; and the next question presented by counsel is that it is

within the statute of frauds, and therefore can not be enforced. The agreement on the part of the mother had been fully performed. The infant was in the custody of the father, under a contract that had never been rescinded, and while the promise to convey the land could not be enforced because not in writing, and for the additional reason, as alleged, that it had been sold by the heirs, its equivalent in value can be given, not as the measure of damages for failing to convey the land, but as constituting in part the standard of value agreed on by the father for the relinquishment or surrender by the mother; and so of the $1,000 agreed to be paid as alleged. The mother can not be deprived of the child, and no damages awarded or compensation made, because the consideration agreed to be paid was not in writing.

In the case of Berry v. Graddy, Administrator of Belt, reported in 1 Metcalfe, Graddy had incurred a heavy expense in the purchase of a farm in Kentucky, and was induced to do so by Belt, who was an uncle of Graddy's wife; Belt promising to pay $5,000 of the purchase money in three years, if Graddy would purchase the place and not remove to Mississippi. Graddy performed his agreement, and the statute of frauds being pleaded, it was held that as he could not be restored to the situation in which he was in before the contract was made, nor compensated in damages by any other standard than that furnished by the contract itself, it would be a fraud to deprive him of the benefit of it on the ground that it was verbal merely.

It would be difficult to estimate the value placed

upon the surrender by the mother of the object of the contract in this case, in confiding her child to the care and custody of the intestate, and therefore, following the case cited, we can only measure the amount of recovery by the pecuniary standard fixed by the parties.

The care, custody and education of the child was with the father, and this obligation discharged by him as long as he lived. It was purely personal, and for its future support and maintenance we perceive no remedy. The personal representative is not entitled to the custody of the child or required to educate it. It was a personal trust confided to the father only, and the obligation to do so terminated in the death of the intestate. The agreement to give the child $1,000 and the farm of the value of $2,700, took effect when the contract was performed by the mother, and the obligation to do so at once existed and could, but for the statute requiring sales of land to be in writing, have been enforced as to the land; and as the intestate received the consideration upon which his promise rested, and disposed of that which he had agreed to give, or failed to comply with the agreement, its equivalent in value is the measure of recovery to the extent the promise to convey is invoked.

It is not necessary that this court should determine the question raised as to the right of the mother to make an absolute and unconditional disposal of her illegitimate children; but when the mere right to the custody, care and education of the child is surrendered to the natural father, the Chancellor, where the

father is able and willing to provide for the child, and is in other respects a proper person to raise it, would not, under such a contract as this, require its restoration, that the State might support it, or confide it again to the care of the mother, by reason alone of her natural claim to the custody of her offspring. The care and well-being of the child, in such a case, would control the action of a court of equity, and the doctrine of *filius nullius* would not be in the path of the Chancellor, in the attempt to provide for those whose existence can be attributed alone to the criminal misconduct of both the natural father and mother. It results, therefore, that the demurrer to the petition should have been overruled.

The case is remanded for proceedings consistent with this opinion.