# CHARLESTON.

GOODWIN *v.* BARTLETT *et al.*

Submitted February 1, 1897—Decided April 17, 1897.

SPECIFIC PERFORMANCE—*Parol Contract—Real Estate—Possession.*

In a suit to enforce specific performance of a parol contract or agreement to devise or convey real estate, possession is an essential part performance of such contract. (p. 334.)

Appeal from Circuit Court, Harrison county.

Bill by Elmer F. Goodwin against Mary Bartlett and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

JOHN BASSELL and J. G. ST. CLAIR, for appellants.

LEWIS C. LAWSON, for appellee.

McWHORTER, JUDGE:

At April rules, 1895, of Harrison County Circuit Court, Elmer F. Goodwin filed his bill in chancery against Mary Bartlett, Elizabeth Sinclair, and others, setting up a parol contract and agreement with one Rebecca Goodwin, his aunt, who was the owner of one undivided half of a tract of sixty-one acres of land, and another tract of four acres, and also held the other undivided moiety of the sixty-one acres under the will of her sister Zippora, during her life, remainder of said undivided moiety to the brothers and sisters of said Zippora in equal proportions. Rebecca lived upon the said sixty-one acres, and had personal property. By the said contract and agreement, made verbally between said Elmer and Rebecca, in May or June, 1892, he was to live with her at her home upon said land, take care of her, and manage her property, during the residue of her life; and, as a remuneration for such services, she was to give him her entire estate, real and personal, at her death. He alleged that he did remain with her according to the terms and requirements of such contract or agreement, but that she died intestate, and without making him any conveyance, by deed or will, of her estate,—setting out in his bill the names of her heirs at law, and alleging that he had fully complied with his part of the contract; that it was a sacrifice to him in the performance of said contract and agreement; that he was offered good positions as a school teacher in high and graded schools in this State, and declined to accept the same on account of said contract; that for all the time he so labored upon said lands and stayed with said Rebecca, and for all the services performed and money expended, he never received any compensation whatever from said Rebecca, or from any one for her use, but always relied upon said contract, and expected said property at her death; and praying that the contract might be specifically enforced, and the heirs compelled to convey to him the entire real estate, and that the personalty be applied in payment and discharge of the debts and liabilities of the said decedent. The appellants, Mary

Bartlett and Elizabeth Sinclair, filed their joint answer, denying the allegations of the bill, and putting the plaintiff upon proof, and the other defendants also filed their answers. The property was, by order of the court, placed in the hands of a receiver. Considerable testimony was taken to prove the allegations of the bill, the contract, and the service under it, and rebutting testimony taken by the defendants.

The evidence is somewhat conflicting as to the proof of the contract and the services rendered thereunder, and perhaps is quite sufficient to establish it in a court of law as a claim against the estate; but it is neither claimed in the pleadings, nor shown by the evidence, that the plaintiff was ever placed in possession of the property under such contract. The decisions in Virginia and West Virginia are uniform against the enforcement of contracts of this nature without possession being given under the contract, at least as an essential part performance thereof. In the case of *Reed* v. *Vannorsdale*, 2 Leigh 569, James Reed, being wealthy and childless, verbally agreed with his brother Charles, who was poor, and had a large family of children, that if Charles would forego his intention to move to the West, and move to and settle on a tract of land belonging to James, near his residence, James would convey the land to him in fee. Charles, induced by these promises, executed the agreement on his part, but without incurring any expense or loss in so doing. Held, there was neither a meritorious nor valuable consideration to support the agreement, and equity can not decree specific performance against James' heirs. This was a stronger case than the one under consideration, and included possession of the property, but the court refused to enforce it. In *Darlington* v. *McCoole*, 1 Leigh 36, plaintiff, Darlington, married McCoole's daughter, and was about to remove to another part of the state, under a contemplated contract with one Vanmeter to go into a partnership in the tannery business; and McCoole, in order to induce him to remain, that he might have his daughter near him, told him he would give him certain real estate if he would give up his thought of removal, and would assist him in putting a tannery on the property, and give it to him. He put him in possession of it, and assisted him in improving it, and he

remained on it some thirteen years. Darlington's wife died, leaving a child, for which McCoole, the grandfather, provided, and then refused to carry out his contract to convey the property to Darlington; and the court held, on Darlington's undertaking to enforce the specific performance of the contract, that in such a case, when the donor has received nothing and the donee lost nothing,—for it was claimed that he (Darlington) had had the use of the property all the time free from rent,—and when the chief motive of the gift (a provision for the donor's daughter) is annihilated by her death, and when the father has discharged the moral obligation to provide for her issue, there is nothing to call into action the powers of a court of equity. There is neither a valuable nor a meritorious consideration, without one of which a court of equity will not aid a defective conveyance, much less enforce a bare agreement, even if it were in writing. This was a case in which the donee had been placed in possession of the land, and held it and worked on it thirteen years. In *Frame* v. *Frame*, 32 W. Va. 463, 475, (9 S. E. 901, 906), the Court holds: "If a donee, being a child, under a parol gift of real estate by a father, take possession and expend money or labor to improve it, as against the donor he stands upon the same footing as a purchaser for valuable consideration. The statute of frauds has no application to the transaction, and equity will compel its specific performance by requiring him to execute his deed to consummate his gift."

On examination of the authorities cited by the appellee, I find in New Jersey the courts have in one or two instances gone to the extent of sustaining contracts of this character without possession. In the case of *Pflugar* v. *Pultz*, 43. N. J. Eq. 440, (11 Atl. 123), Pultz agreed, in 1883, that, if plaintiff would do his housework and take care of him the rest of his life, he would devise her the house and lot wherein they then lived. In 1886, without sufficient cause, he left, and went to live with M., and conveyed to M., by deed, the property he had agreed to leave to Pflugar. It was there held that Pflugar was entitled to the relief, and that the agreement was not invalid, under the statute of frauds. Yet in this case, where he left to stay with M., he left Pflugar in possession. This case came the nearest to sustaining the appellee in his position of any of his ref-

erences. One of the principal cases relied upon by him is *Neale* v. *Neales*, 9 Wall. 1: "Equity protects a parol gift of land equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property; and this is particularly true where the donor stipulates that the expenditure shall be made, and, by doing this, makes it the consideration or condition of the gift." So, in quite all the cases referred to by appellee, possession under the contract seems to be indispensable. In his reference to *Benge* v. *Hiatt's Adm'r*, 82 Ky. 666, where the father of an illegitimate child induced the mother to give up the child to him, and he agreed to educate it and give one thousand dollars, and further agreed to give the child the tract of land on which he lived, the court held that the one thousand dollars contract could be recovered, while he could not be forced to convey the tract of land, because the agreement was not in writing, but the value placed on it by him, of two thousand seven hundred dollars, could be recovered at law in damages.

The court erred in decreeing that the plaintiff, Elmer F. Goodwin, was entitled to the land of which Rebecca died seised.

The second assignment is that the court erred in decreeing to the plaintiff five-eighths of the sixty-one acres, for the reason that Rebecca Goodwin, under the will of Zippora, had nothing but a life estate in the moiety of said sixty-one acres; and, at the death of Rebecca, the estate or interest of said Zippora passed to the other brothers and sisters of said Zippora, and the will of said Zippora should be read as if it had used the words: "I give and devise all my estate, real and personal, whereof I may die seized or possessed, to my sister Rebecca Goodwin, to have and to hold the same during her natural life, then to be equally divided between my *other* brothers and sisters, my sister Rebecca Goodwin is to pay all my debts and funeral expenses,"—such being the manifest intent of the testatrix. The will under which this devise was made reads as follows: "I give and devise all my estate, real and personal, whereof I may die seised or possessed, to my sister Rebecca Goodwin, to have and to hold the same during her natural life, then to be equally divided between my brothers and

sisters. My sister Rebecca Goodwin is to pay all my debts and funeral expenses." Rebecca took nothing under this will but a life estate in the real property, and, she being the owner of but one undivided half thereof, her heirs could take but the one-half; and, if plaintiff was entitled to recover at all, he could recover but one-half, or four-eighths. Hence the court erred in giving him five-eighths of the sixty-one acres. The appellee has mistaken his relief. If he is entitled to any thing, it is in the nature of a claim against the estate of Rebecca Goodwin for services rendered and money expended for the decedent under the alleged parol contract, and not for a specific performance thereof.

For the reasons assigned herein, the decree complained of is reversed, with costs to the appellee, and the cause remanded for further proceedings to be had therein, to enable plaintiff to prosecute his said claim against the estate if he so desires.

Reversed.