## Myers and Cannon v. Commonwealth.

(Decided December 18, 1925.)

### Appeal from Trigg Circuit Court.

1. Intoxicating Liquors—Warrant Charging Unlawfully Transporting Whiskey Held Sufficient.—Warrant charging accused of unlawfully transporting whiskey, under Kentucky Statutes, section 2554a-1, held sufficient, although indictment under this section must negative exceptions contained in it.

2. Criminal Law—Defendants, Charged with Unlawfully Transporting Whiskey, Not Entitled to Separate Trials as Matters of Right. —Under Criminal Code of Practice, section 237, defendants, charged with unlawfully transporting whiskey, held not entitled to separate trials as a matter of right; charge being a misdemeanor.

3. Criminal Law—Evidence Held Not to Show Abuse of Discretion in Refusing Separate Trials.—Evidence held not to show that court abused discretion in refusing to grant separate trials to defendants, charged with unlawfully transporting whiskey.

4. Intoxicating Liquors—Evidence Held to Support Conviction and Justify Submission of Case to Jury.—In prosecution for transporting whiskey, evidence showing finding of whiskey jars along road taken by accused in flight from officers, and finding part of seat belonging to accused's car among some of whiskey jars, held to support conviction and justify submission of case to jury.

5. Criminal Law—Evidence Not Resulting from Use of Illegal Search Warrant Properly Admitted in Evidence.—In prosecution for transporting whiskey, contention that evidence was obtained by illegal search warrant held without merit, where disclosures received in evidence were not brought to pass by means of search warrant.

6. Criminal Law—Statements of Accused Out of Court Properly Admitted in Evidence, where Not Result of Sweating.—Statements made by accused out of court properly admitted in evidence, where evidence failed to disclose that they were the result of sweating, in violation of Kentucky Statutes, section 1649b-1, et seq.

7. Intoxicating Liquors—Court Should have Instructed that One Aiding and Abetting in Transportation of Liquor Cannot be Deeme Principal, Unless it was Done Knowingly.—Under Kentucky Statutes, section 2554a-5, trial court should have told jury that accused, who was riding with codefendant, accused of transporting whiskey, could not be deemed principal and punished as such if he only aided and abetted in doing so, unless it was done knowingly.

McKENZIE & SMITH for appellants.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming as to appellant Myers, and reversing as to appellant Cannon.

Appellant, Ernest Myers, lives near Hopkinsville. On March 17, 1925, in company with appellant, Cecil Cannon, whom he had met up with on the streets of Hopkinsville, and whom he had invited to make the trip with him, he drove his Dodge roadster from his home through Cadiz to Golden Pond in Trigg county for the purpose, as he says, of selling an automobile to Hugh Wallace,

who lived near that place. A man by the name of Eubanks accompanied these two men on the trip. When Myers and Cannon reached Golden Pond they learned, as they testify, that Wallace had gone down the road towards the Tennessee river, and so they went on after him. A Doctor Wall, who lived at Golden Pond, was going in that direction to visit a sick patient and they gave him a lift. They dropped him at the place where he had to go, agreeing to pick him up on their way back, which they did. They say that as they neared the Tennessee river, they learned that Wallace had turned off the main road on to one of the side roads and so they did likewise in order to find him. Wallace was not introduced as a witness. Whether they turned to the left or right, they were, on the trial, unable to say. Not finding him, they returned in about two hours to the place of the rendezvous they had with the doctor. It is shown that in this interim they could have easily made the trip to Ironton, Kentucky, an important circumstance, as will hereafter be seen. The doctor was waiting for them. Although he had ridden down on the inside of the car with the three men, and although it was by now nearing dusk and was sprinkling, he made the trip back on the running board of the car. The doctor says he did this because it was too crowded inside. Before reaching Golden Pond, the exhaust pipe of the car came loose and one of the tires suffered a puncture. The men in the car, assisted by Dr. Wall, fixed the puncture, in the course of which the doctor had occasion to get the tools out of the back part of the car. In doing so, he says he saw no whiskey in the car. They were unable to fix the exhaust pipe and as the muffler was thus disconnected from the engine, the noise of the exhaust when the car was running sounded, as the witnesses say, like the popping of an airplane in the sky. The doctor got out at Golden Pond and the young men continued on their way towards Cadiz.

In the meantime, an affidavit had been filed with the Trigg county judge after Myers had driven through Cadiz on his way to Golden Pond, and on this affidavit, the county judge had issued and delivered to the Trigg county sheriff a search warrant directing this officer to search the automobile of Myers for whiskey. There is a stream known as Little river hard by Cadiz over which the road from Hopkinsville to Golden Pond crosses on a covered bridge. As the day waned, the sheriff drove his

automobile down to the covered bridge and placed it across the road on the Cadiz side in order to block it. After crossing the river, the road ran by a mill and then up a hill. It was growing quite dark when the appellants and Eubanks drove down this hill to the river. As they started on to the bridge, the sheriff turned on the lights of his car, which then shone upon the Dodge roadster, and at the same time made his way towards the other end of the bridge. Myers at once backed his car off the bridge. The sheriff and his *posse* say that as Myers did so, he opened fire upon them, whereupon they returned the fire. The appellants deny that they ever fired a shot and in this they are corroborated by some passersby. Eubanks, who has disappeared, did not testify in this case. It may be that the sheriff's *posse* mistook the popping of the exhaust for the sound of pistol fire. These young men claim that when they started on the bridge and then discovered the lights of another automobile headed their way, they thought it was trying to cross the river and that they backed off the bridge to let it pass. When they were then fired upon, they thought they were being held up and so at once turned their machine around and fled up the hill. As they drove up the hill, the fire from the sheriff's *posse* punctured one of their tires, hit the machine in several places and one bullet passed through Myers' arm. Instead of stopping at the first farm house for aid, the appellants and Eubanks drove back over the road they had just come until they came to the Linton road. This they took, making their way back to Hopkinsville by a very roundabout course through Maggie and Pee Dee. Near Maggie, they got stuck in the mud and were compelled to get assistance from a neighboring farm house to get out. They, however, made no complaint to this farmer as he helped them and Myers sought no help or treatment for his arm. They got back to Hopkinsville near midnight and drove on out to the farm of appellant's father. In the meantime the Trigg county sheriff had come over to Hopkinsville hunting them. He found them after midnight sitting in the machine parked by the side of the road near Myers' home and arrested them. They say they had just got there and were parked on account of flat tires. When the sheriff and his *posse* found these men, they say that although they found no whiskey in the Dodge roadster, it smelt strongly of this intoxicant. Others who were present say that they did not note any smell of whiskey, but some

of these admit that when they saw the car on the following morning, it smelt strongly of coal oil. It is sought to infer from this that the automobile had in the meantime been doused with coal oil to kill the smell of the whiskey.

On the morning following the night of the arrest of the appellants, a farmer living near Maggie found scattered along the road over which appellants had travelled a number of Mason fruit jars of moonshine whiskey. Some of these jars were broken and some not. There were also some broken jugs which had contained whiskey found among the debris. Off the side of the road and in some bushes, were found a number of cartons of these fruit jars with whiskey in them. These cartons had the name of Mrs. Cora Rhodes, Ironton, Kentucky, upon them. Nearby was the side curtain of an automobile. In the road and among the jars of moonshine was a peculiar shaped board which, as we read the record, fits back of the seat of a Dodge roadster and covers a place where tools are carried. This board was missing from Myers' machine when it was found the night of his arrest. He admits that he lost it and probably at the place where it was found, for he had stopped there that night to fix one of his tires, to do which he had had to get to the tools. He and Cannon deny, though, that they threw any whiskey out at this point or 'that they had any whiskey in the car at any time that day or night.

In addition to the foregoing facts, evidence *pro* and *con* bearing on the reputation of Myers as an illicit dealer in intoxicants was introduced but none as to Cannon. Under a warrant charging these appellants with "unlawfully transporting whiskey" they were jointly tried in the Trigg quarterly court and there found guilty. An appeal to the Trigg circuit court brought a like result and from this last judgment these appeals are prosecuted.

It is first insisted that appellants' demurrer to the warrant under which they were arrested and prosecuted should have been sustained. It charged them with "unlawfully transporting whiskey." Appellants insist that because it failed to charge them with knowingly and wilfully in so doing, it was fatally defective and cite Sams v. Commonwealth, 208 Ky. 324, 270 S. W. 827. This case involved a prosecution for violating section 2554a-26 of the Kentucky Statutes, which denounces the offense of knowingly selling flavoring extracts (Jamaica ginger in

this case) for beverage purposes or under circumstances from which the seller might reasonably deduce the intention of the purchaser to so use them. As has been held times without number such an offense is bottomed on guilty knowledge. It is so defined in the statute which creates it, and hence a warrant or indictment to properly charge such an offense must embody this idea of guilty knowledge. But the offense for which appellants were tried is created by section 2554a-1 of the Kentucky Statutes, which reads:

"That it shall be unlawful to manufacture, sell, barter, give away, or keep for sale (or unlawfully have in possesssion) or transport spirituous, vinous, malt or intoxicating liquors except for sacramental, medicinal, scientific or mechanical purposes in the Commonwealth of Kentucky."

Although an indictment under this section must negative the exceptions contained in it, we have held that a warrant need not do so. Vanover v. Commonwealth, 202 Ky. 813, 261 S. W. 604. In that case, the rule that a warrant need not charge a public offense with the same particularity and strictness required in an indictment was followed. A warrant simply charging "unlawful possession" was there upheld. As "unlawful possession" and "unlawful transportation" are both created by the same section of the statute, in the same language, and in juxtaposition, it follows that a warrant charging a defendant with "unlawfully transporting" whiskey should be just as good as a warrant charging him with "unlawfully possessing" whiskey. It follows, then, that there is no merit in appellants' first contention.

Appellants, and especially Cannon, next say that their motions for separate trials should have been sustained. Defendants are only entitled to separate trials as a matter of right when they are charged with felonies. Criminal Code, section 237. The charge here being a misdemeanor, the appellants were not entitled to separate trials as a matter of right. If such trials rest in the discretion of the trial court where the charge is a misdemeanor, the evidence does not show that the court abused such discretion in this case in refusing to grant separate trials to appellants. Merdith v. Commonwealth, 199 Ky. 544, 252 S. W. 894.

The next contention of appellants is that the court should have peremptorily instructed the jury to find them

not guilty because there was no evidence tending to establish their guilt. In support of this contention they rely on Mullins v. Commonwealth, 196 Ky. 687, 245 S. W. 285. That case and the present one are clearly distinguishable on their facts. Even in the Mullins case, the court said that had even the additional fact been shown that the Mullinses stopped at the cross-tie pile (where the liquor was found) as they walked away, the case would have been one for the jury. Here the flight, the roundabout course to Hopkinsville, the peculiar shaped board among the whiskey jars, the side curtain with the cartons, the failure to ask for aid along the road though one was wounded, the smell of the car when found, not to mention the reputation of Myers—all, if believed, undoubtedly support the verdict and, if so, justified the submission of the case to the jury.

It is next urged that the search warrant under which the sheriff purposed to search Myers' car was defective and hence nothing which occurred at the bridge or during the subsequent flight was admissible in evidence. To support this theory, they cite Catching v. Commonwealth, 204 Ky. 439, 264 S. W. 1067, where a sheriff without a search warrant attempted to search a buggy in the nighttime. He flashed a search light in the horse's face, causing it to scare and so to overturn the buggy. The defendant fell out. The sheriff went up to where he was and found him holding a fruit jar full of whiskey. We held that as the sheriff had no right to search the buggy, his discovery of the whiskey by reason of the "fortuitous circumstances" which disclosed it could not be admitted in evidence. The difference between that case and this one is plain. The disclosure of the whiskey by Catching was involuntary, brought about by the illegal act of the sheriff. Here the flight, the losing of the peculiar shaped board, the casting away of the whiskey and the smell of the car were all the voluntary acts of appellants, the discovery of none of which was occasioned or brought about by the search warrant, even if it be conceded to have been irregular, a point which we do not decide. The flight was seen of all who were present. The whiskey and board were found by a farmer, not an officer of the law. The irregular search warrant, if it be conceded such, did not bring these disclosures to pass. There is no merit, then, in this contention of appellants.

Appellants also say that certain statements made by them out of court should not have been admitted in evi-

dence to contradict certain testimony given by them on the trial because such statements were elicited from them in violation of sections 1649b-1, et seq., of the statutes, known as the anti-sweating act. The evidence utterly fails to disclose any such "sweating" as is forbidden by this act. Indeed, every precaution was taken to safeguard the rights of these appellants in that connection, and the trial court properly admitted these statements in evidence.

The last ground for reversal relied upon by appellants goes to the sufficiency of the instructions. As to Myers, they correctly and aptly stated to the jury the law of the case. As to Cannon, though, a different question is presented. It will be remembered that the Dodge roadster did not belong to Cannon. It was the car of Myers or of the latter's wife. Cannon did not drive it or, so far as this evidence shows, have any control over it. He was simply invited by Myers to make the trip with him. Although the witnesses were questioned about his reputation as an illicit handler of intoxicants, no one knew anything detrimental to him in this or any other connection. The warrant charged Cannon with the unlawful transportation of whiskey. The court submitted only this aspect of the case to the jury. The evidence tended strongly to show that it was Myers and not Cannon who did the transporting. It is true Cannon was along and the jury may have thought that Cannon was thus so aiding and abetting Myers as to make him a principal along with Myers. But the section of the prohibition act, being section 2554a-5 of the Kentucky Statutes, which declares that an aider and abettor of any violation of it is to be deemed a principal and punished as such, makes knowledge an indispensable element of such aiding and abetting, and we have held that an instruction under this section which fails to embody this element of knowledge is fatally defective; the word "unlawfully" not being a substitute therefor. Nunnelley v. Commonwealth, 209 Ky. 191, 272 S. W. 378. The trial court should have told the jury that Cannon could not be deemed a principal and punished as such if he only aided and abetted Myers in the transportation of the whiskey unless he knowingly so did. The case rested on circumstantial evidence and inference. It may have been that Cannon did not know what Myers was doing, and that what assistance, if any, he gave to Myers in driving the car was done in ignorance of its cargo. Because of the trial

court's failure to so instruct the jury as to Cannon, the judgment as to him must be reversed. As to Myers, however, no error appearing prejudicial to his substantial rights, the judgment is affirmed.