## Bates, Jr. v. Starkey.

(Decided January 12, 1926.)

## Appeal from Pike Circuit Court.

1.  Contracts—Death Held Not to Revoke Contract, Unless Personal to Deceased.—Death, in general, does not revoke a contract, unless it be a personal engagement to be performed by deceased himself, and requiring his personal skill or taste.

2.  Contracts—Executors and Administrators—Death of Owner Prior to Acceptance of Bid Held to Entitle Architect Only to Compensation for Plans.—Where owner contracted to pay architect 1 per cent of cost on completion of plans and 2 per cent when contract was awarded and construction begun, all bids to be subject to approval of owner, death of owner before acceptance of a bid terminated the contract, and architect was not entitled to anything over 1 per cent, nor could he recover on quantum meruit, since owner's executrix received no benefit.

3.  Contracts—No Recovery Under Implied Contract, Where Work Done Under Express Contract.—Where work is done by an architect under an express contract, the rights of the parties are meas-

used by the contract, and neither can rely upon an implied contract.

PICKLESIMER & STEELE for appellant.

MOORE & CHILDERS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

N. Starkey desired to build a theatre on a lot he owned in Pikeville and to this end on February 1, 1921, he made a written contract with Richard M. Bates, Jr., of Huntington, W. Va., an architect, by which he employed Bates to prepare the plans and specifications to be submitted to him for approval. After these were accepted the architect was to proceed to make scale details and plans and specifications and advertise for bids and submit them to the owner for approval and acceptance for the construction of the building. When the contract was awarded the architect was to supervise the construction of the building. The provision of the contract as to the pay of the architect is in these words:

"The architect will receive his payments in the following manner: One (1%) per cent when the plans and specifications are completed and a full and complete set of blue prints delivered to the owner, which per cent is based on the estimated cost; two (2%) per cent of the amount of the general contractor's bid, to be paid when the contracts are awarded and the construction work is started, the remaining two (2%) per cent to be paid in monthly installments based on the amount of monthly payments made to material men, contractors, subcontractors, and other costs of the building; the above making the total charge of five (5%) per cent for the work performed by the architect."

The architect made the plans. He submitted them to Starkey, who approved them. The architect then advertised for bids. He determined the lowest bid and submitted the bids to Starkey. But when these papers reached him, Starkey was sick and he died a few weeks later without being able to examine them. The amount of the lowest bid was $52,200.00. Starkey paid Bates in his lifetime $300.00 and after his death his executrix

paid him $633.33. Later she filed this suit against Bates to recover the amount she had paid him over and above 1% of the cost of the proposed building. Bates filed an answer and counterclaim, in which he sought to recover the 3% of the cost of the proposed building less what he had been paid. There was no dispute about the facts. On these facts the circuit court entered judgment in favor of the executrix. Bates appeals.

It is a well settled rule that death is in general no revocation of a contract unless it be a personal engagement to be performed by the testator himself and requiring his personal skill or taste. Hawkins v. Ball, 18 B. Mon. 815. In 6 R. C. L. 1011, the rule is thus stated:

> "Where distinctly personal services, requiring peculiar skill, are to be rendered by each of the contracting parties as inducements of the contract, the death of either of the parties is the death of the contract. But the fact that one of the parties to the contract is to render personal services does not necessarily have the effect of terminating the contract upon the death of the other party. For instance, whether a contract is terminated by the death of an employer must depend upon the nature of the contract; whether it is one requiring the continuing existence of the employer, for performance on his part, or one which can according to its spirit and meaning, be performed by his administrators."

The rule is differently stated in 13 C. J. 644, in these words:

> "Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive and shall be capable of performing the contract, so that death or disability will operate as a discharge. The right to regard the contract as discharged by the death of a party is reciprocal, and a party whose personal representative would not be bound to perform in case of his death cannot, on the death of the other party, charge such party's representative.
>
> "The rule does not apply where the acts are of such a character that they may be as well performed by others as by the promisor's personal represen-

tatives, nor where the contract by its terms shows that performance by others was contemplated, nor where sickness is to be anticipated."

The cases in which the rule has been applied that the death of one party prevents the other from enforcing the contract, are in the main contracts for personal services between master and servant. It is not necessary for us here to consider the cases, for under either rule there can be no recovery here upon the contract beyond 1%, which is not in dispute. The 2% in controversy, by the terms of the contract, was to be paid when the contract was awarded and the construction work started. The remaining 2% was to be paid as the work progressed. The contract was not awarded; the construction work was not started; so by the terms of the contract the 2% was not payable. The contract contained these words: "After the plans have been prepared he will secure bids and estimates and submit them to the owner for approval and acceptance for the construction of the building." Starkey was, therefore, to approve and accept the bid for the construction of the building before it became binding on him. This he did not do by reason of his death. He had the discretion to reject the bid and award the contract to some one else. He did not exercise the discretion vested in him alone. He died before he had done these things which were personally to be done by him. The contract therefore was not carried out and was not obligatory on his executrix. She was under no obligation to accept or approve any bid for the construction of the building. Death simply removed from the scene of action here one of the parties to the contract before he had an opportunity to perform his part of the contract. If the architect had died, this would be admitted; but the powers of Starkey were no less personal. It necessarily follows that there can be no recovery on the contract beyond the 1%.

It is well settled in such cases that there can be no recovery on a *quantum meruit;* for a *quantum meruit* rests in the end on the ground that the defendant has received a benefit, which in justice he should pay for. But here the executrix has received no benefit. The plans and specifications are valueless to her. If work is done in such cases under an express contract, the rights of the parties are measured by the contract and neither can rely on an implied contract. 3 Page on Contracts,

sec. 1438-1441; 4 Elliott on Contracts, sec. 3611. To hold otherwise would be to enforce the contract though termi nated by the death of one of the parties. This is a risk each took when he made the contract.

Judgment affirmed.