Reversing.
Oliver Wagers was a widower, and Kitty Smallwood was a young lady. They were neighbors residing near each other in Clay county, Ky. His attentions to her attractiveness resulted in her giving birth to a girl child, which was named Hester. The child grew to womanhood and married a Mr. Moore; she later departed this life, leaving a child, Virginia Moore, as a result of that union. Hester Moore died the 27th day of March, 1929, and Oliver Wagers died May 20, 1930. On the 11th day of June, 1930, Anderson Smallwood was by proper orders of the county court of her residence, appointed administrator of her estate, and also as guardian of the infant Virginia Moore. In an action to settle the estate of Oliver Wagers, her administrator and the guardian of Virginia Moore, by an answer and counterclaim sought to recover of his estate, $6,818.18, as the portion of his estate to which he claims Virginia Moore was entitled by virtue of a contract between Oliver Wagers and Kitty Smallwood, her grandmother.
As the basis of his cause of action, he averred that Kitty Smallwood, the mother of Hester Smallwood, and Oliver Wagers, at the time Hester Smallwood was begotten, were unmarried people, and that Kitty Smallwood was the mother of Hester Smallwood, who was begotten in unlawful cohabitation of Kitty Smallwood and Oliver Wagers; that after Hester Smallwood was born, her mother threatened to institute bastardy proceedings against Oliver Wagers, charging him with being the father of Hester Smallwood, for the purpose of compelling him by such proceedings to contribute to the maintenance and support of Hester Smallwood, her bastard child; that they entered into an agreement with each other whereby Kitty Smallwood agreed not to institute bastardy proceedings against him; that, in consideration thereof, Oliver Wagers agreed to help raise her child, Hester, and "to make it an equal heir with the rest of his children"; that Kitty Smallwood performed *Page 353 
her part of the contract, and that Oliver Wagers performed his part of the contract to the extent of helping Kitty Smallwood raise the child, Hester, including contributing to the payment of the cost of her burial, but that he violated his contract in that at the time he departed his life he had failed to make her an heir or "an equal heir with the rest of his children."
A promise by a man, not the father of a child, to make it his heir, is against public policy and therefore unenforceable. Davis v. Jones' Admr., 94 Ky. 320, 22 S.W. 331, 15 Ky. Law Rep. 89, 42 Am. St. Rep. 360. A contract on the part of a father of an illegitimate child to provide for it out of his estate is without consideration and not enforceable. An agreement of the reputed father of a bastard child in consideration of his mother not to prosecute him for the crime of seduction is likewise unenforceable. Mercer v. Mercer's Admr. 87 Ky. 30, 7 S.W. 401, 9 Ky. Law Rep. 884; Steele v. Crawford, 197 Ky. 798, 248 S.W. 197; Clark's Admx. v. Campbell, 212 Ky. 341, 279 S.W. 327. But a promise made by the father of an illegitimate child in consideration of the mother's agreement not to institute bastardy proceedings against him is valid and enforceable. Lewis v. Creech, 162 Ky. 763, 173 S.W. 133; Burgen v. Straughan, 7 J. J. Marsh. 583; Clarke v. McFarland, 5 Dana 45; Benge v. Hiatt, 82 Ky. 666, 56 Am. Rep. 912; Puthuff v. Sewards, 9 Ky. Law Rep. 578; Steele v. Crawford, supra; Clark's Admx. v. Campbell, 212 Ky. 341,279 S.W. 327; Hacker v. Hornsby's Admr., 223 Ky. 122,3 S.W.2d 173; Clark's Admx. v. Callahan, 216 Ky. 676, 288 S.W. 301.
On the authority of these cases, it may now be regarded as the settled law of this state that a contract between a putative father and mother of an illegitimate child, whereby he agrees to make the child an heir or equal with his other children in his estate, or to make provision out of his estate for such child, in consideration of the mother foregoing the institution of bastardy proceedings against him, is not only not void for uncertainty, but is enforceable after the death of the reputed father.
In Clark's Admx. v. Callahan, Hacker v. Hornsby's Admr., Clark's Admx. v. Campbell, and Lewis v. Creech's Admr., it was held that a promise by the father to provide for his illegitimate child out of his estate in consideration *Page 354 
of the mother's agreement not to institute bastardy proceedings against him was valid and enforceable after the death of the father.
The child may enforce it against his estate. See cases supra and also Benge v. Hiatt, 82 Ky. 666, 56 Am. Rep. 912; Blakeley v. Adams, 113 Ky. 392, 68 S.W. 393. Such a contract is for the benefit of the child, and, if living, it is the real party in interest. Section 18, Civil Code of Practice; Matheny v. Chester, 141 Ky. 790, 133 S.W. 754; Gregory v. Harlan Home Coal Co., 182 Ky. 524, 206 S.W. 765; Hendrix Mill Lumber Co. v. Meador, 228 Ky. 844, 16 S.W.2d 482; Bryant v. Jones,183 Ky. 298, 209 S.W. 30.
The amount of the estate of the deceased father is easily ascertainable; the number of heirs he left surviving him are known, and what part of the estate to which each is entitled may be determined. Although the amount of the estate which he would accumulate after the making of the contract or leave for distribution at his death was uncertain at the time of the making of the contract, there is no uncertainty about it after his death. It is susceptible of performance by the personal representative of the reputed father.
We have often held that, where it is established by clear and convincing proof that one in consideration of services performed and to be performed agreed by a parol contract to leave property by will in consideration of services, where the consideration had been fully performed, a recovery may be had, and, in a case where the benefits to the intestate cannot be measured by any of the ordinary standards, the court will adopt the one fixed by the parties themselves and award the claimant the value of the property promised. Waters v. Cline, 121 Ky. 611, 85 S.W. 209, 750, 27 Ky. Law Rep. 479, 586, 123 Am. St. Rep. 215; Benge v. Hiatt, 82 Ky. 666, 56 Am. Rep. 912; Doty's Admrs. v. Doty's Guardian, 118 Ky. 204, 80 S.W. 803, 26 Ky. Law Rep. 63, 2 L.R.A. (N.S.) 713, 4 Ann. Cas. 1064; Berry v. Graddy, 1 Metc. 553; Usher's Exr. v. Flood, 17 S.W. 132, 12 Ky. Law Rep. 721; Jones v. Comer, 76 S.W. 392, 25 Ky. Law Rep. 773; Hinton v. Hinton's Exr. 239 Ky. 664, 40 S.W.2d 296.
The fact that a claimant under such a contract predeceased the promisor does not prevent the estate of *Page 355 
such claimant to recover the value of services which he had fully performed under such a contract.
The rule and the reasons for it, which has been applied by this court in the cases supra, are plainly applicable to the facts alleged in the petition in the present case.
The agreement of the reputed father to make the illegitimate child an "equal heir with the rest of his children" was tantamount to an agreement by the father, for a consideration, to provide for the child out of his estate at his death an equal amount with his other children. The language used by the parties to the contract should be so construed as to carry out their intention. Conn. v. Lewis, 5 Litt. 66; Hildrith v. Forrest, 4 J.J. Marsh. 217; Shultz v. Johnson's Admr., 5 B. Mon. 497; Morris Shoe Co. v. Coleman, 187 Ky. 837,221 S.W. 242. The words used by them in the contract must be so construed as to carry out their intention in the light of the circumstances surrounding them at the time of its making. Murray v. Carothers, 1 Metc. 71; Miller v. N.Y. Life Ins. Co.,179 Ky. 246, 200 S.W. 482.
The contract was fully executed by the mother of the illegitimate child. The father has escaped the burden incident to and usually accompanying a prosecution for bastardy. This was the consideration which moved him to enter into the contract. Apparent and great disproportions between the consideration and his obligation might tend to counteract proof of the claim that such promise was in fact made, but with the facts admitted on the demurrer to the petition, the apparent extravagance of the promise will not authorize the court to say that it was not legally binding after the death of the parties to it. Clarke v. McFarland, supra.
The fact the illegitimate child predeceased the father does not prevent the maintenance of an action by her personal representative to recover damages of his estate for the breach by him of his contract. The rule in every case arising out of a contract is that the death of a contracting party does not operate as a revocation or discharge the deceased from his part of the agreement, if it is of such a character that it can be performed by his personal representative. Hawkins v. Ball's Admr., 18 B. Mon. 816, 68 Am. Dec. 755; Bates, Jr., v. Starkey,212 Ky. 347, 279 S.W. 348. *Page 356 
The death of one or both of the contracting parties does not act as a revocation or discharge of such an agreement, since it is of such a character that it may be performed by the contractor's personal representative. Hawkins v. Ball's Admr. supra; Bramlette's Admx. v. Boyce, 4 Ky. Law Rep. 196; Watts v. Collins' Exr., 12 Ky. Law Rep. 558; Bates v. Starkey, 212 Ky. 247, 279 S.W. 348. The rule is different where the contract is personal and cannot be performed by the personal representative. Shultz v. Johnson's Admr., 5 B. Mon. 497.
Under section 10, Ky. Stats., all actions survive
 "except actions for assault, slander, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury."
The exceptions found in the statute do not embrace causes of action founded on contracts. The cause of action set out in the appellant's counterclaim is founded on contract, and his claim predicated thereon is in its nature a claim for damages for a breach of a contract. Heeter v. Jewell, 6 Bush 510; Clore v. Nichols, 199 Ky. 581, 251 S.W. 846; Coons v. Nall's Heirs, 4 Litt. 263; Burchett v. Burchett, 226 Ky. 5, 10 S.W.2d 460.
Both the administrator of the estate of Hester Moore and the guardian of Virginia Moore are parties, and, no objection being made to their joint pleading to recover for breach of the contract, we are not required to determine whether the right of action is in the one and not in the other. Bell v. Elrod,150 Ga. 709, 105 S.E. 241; McWilliams v. Pair, 151 Ga. 168,106 S.E. 96.
Judgment reversed, with directions to overrule the demurrer and for proceedings consistent with this opinion.